Hillsborough, ⎱ No. 3992.
Apr. 3, 1951. ⎰

NASHUA TRUST COMPANY *v.* HEGHENE MOSGOFIAN, *Ex'x & a.*

18

*Hamblett, Griffith & Moran,* for Nashua Trust Company, filed no brief.

*Herbert W. Rainie* and *Dicran Simsarian* (*Mr. Rainie* orally), for Harry Eranosian.

*Frank B. Clancy, Jr.* and *Thomas O'Neill* (*Mr. Clancy* orally), for the executrix.

BLANDIN, J. The sole claim of the defendant Harry Eranosian as stated in his brief is that he was given the deposit in the plaintiff bank by a writing signed by his brother Arakel on July 31, 1926. Our problem therefore is to determine whether this writing in the light of the surrounding circumstances (*Pettee* v. *Chapter,* 86 N. H. 419, 423, 427) vested a present interest in Harry. There are two ways in which he could have acquired a present interest, one by gift *inter vivos* and the other by contract.

As to the first it must be noted at the outset that the claimant Harry has the burden of proving all the elements of a valid gift.

*Dover &c. Bank* v. *Tobin*, 86 N. H. 209. These as often stated
are a "manifest intention of the donor to give" and an uncondi-
tional delivery and acceptance of the thing given. *Dover &c. Bank*
v. *Tobin, supra,* 210. It is also our law that "a deposit by one in
the name of himself or another, or the survivor, is unavailing in
and of itself to give the other any ownership or interest in the
account." *New Hampshire Savings Bank* v. *McMullen,* 88 N. H.
123, 126.

In applying these principles to the facts we learn first, as bear-
ing on the deceased's intent that he kept and apparently intended
to keep complete control over the deposit at all times by holding
the pass book. It must be assumed he knew what he was doing
because he had signed an agreement with the bank on opening his
account to abide by its rules, one of which was that no one could
withdraw money without the pass book. Next, he never procured
Harry's signature though the writing plainly contemplated this
as the final step in completing the agreement. The twenty odd
years which elapsed between the time he signed the writing and the
date of his death appears to have given ample opportunity to do
this if he so desired. Again, he alone made all deposits and with-
drawals, conducted all the transactions with the bank and there is
no evidence that Harry, separated from the scene by thousands of
miles, even knew of the arrangement.

Turning to the probate of his estate we find all his assets were
cash and amounted to $9,255.16 of which $6,350.95 was represented
by the disputed bank book and the rest by $2,877.21 deposited in
the Second National Bank of Nashua and $27 in money on hand.
In his will dated November 1, 1947, less than a year before his
death, he gave $3,000 outright to persons and institutions other than
his brothers and directed the remainder to be divided equally be-
tween the complainant and his other brother Aram. If he intended
Harry to receive the entire disputed fund this would leave nothing
for Aram although the will indicates he wished to treat them
equally. It appears on the whole that the facts so far from show-
ing the probabilities to be that Arakel intended a gift *inter vivos*
indicate the contrary. In any event they fall far short of sustain-
ing the claimant's burden of proof on this issue. *Dover &c. Bank*
v. *Tobin, supra,* 210.

We turn now to the question whether the claimant gained a
present interest under the agreement between Arakel and the bank.
It appears he did not. Arakel agreed with the bank to be bound

by its by-laws one of which was that the bank book must be presented for any withdrawal. Harry never had the bank book, never presented it nor withdrew any money. There was no agreement that Harry should have any interest in money not withdrawn. It appears that this writing, to which Arakel never bothered to get Harry's signature, really goes no further than the agreement in the case of *Packard* v. *Foster,* 95 N. H. 47. It protected the bank in case of withdrawal to the same extent as the statute (R. L., *c.* 309, *s.* 20) and no more since it vested no right of withdrawal except upon presentation of the bank book. *New Hampshire Savings Bank* v. *McMullen, supra; Dover &c. Bank* v. *Tobin, supra,* 211.

The case of *Ibey* v. *Ibey,* 93 N. H. 434, cited by the claimant in support of his claim that he gained a present interest by the writing is clearly distinguishable. There the contracts for the benefit of the third person concerned United States Savings Bonds. They were fully executed and as the opinion states (*p.* 435) "were contracts with the United States for the benefit of third parties and as such entirely valid" without personal delivery. An examination of the defendant's brief in this case (505 Briefs & Cases 520) shows that the bonds on their face were subject to department regulations that they might not be reissued during the lifetime of the beneficiary to eliminate his name and that they should be paid only to him on the death of the registered owner. He therefore acquired a present interest independent of possession of the document of title which is not so here. It would serve no useful purpose to review decisions in other states, such as *Vaughan* v. *Millikin National Bank,* 263 Ill. App. 301, where the facts, the statutes and apparently the policies differ from ours. See *Packard* v. *Foster,* 95 N. H. 47, 50. It appears that under our law we have here neither a gift *inter vivos* nor a contract passing a present interest (*Packard* v. *Foster, supra*) and the order must be

*Decree for the executrix.*

KENISON, J., dissented: the others concurred.

KENISON, J., *dissenting:* When a depositor in good faith enters into a special agreement with a bank that his account shall be payable to him or his brother "or to the survivor of us, and that all such payments made to either one shall be equally binding upon both . . . ," the agreement ought to be respected and enforced.

This is particularly so in the present case where there is a complete absence of such complicating factors as evasion of taxes, fraud upon creditors or fraud upon a wife. Joint bank deposits payable to the survivor are in extensive use today by persons of small means who wish a designated relative or a member of the family to own the deposit at their death although the donor retains the bankbook, and makes all the deposits and the withdrawals. In most cases where there is litigation, the results show the common denominator to be one of frustrated intention. *Dover &c. Bank* v. *Tobin*, 86 N. H. 209; *New Hampshire Savings Bank* v. *McMullen*, 88 N. H. 123; *Packard* v. *Foster*, 95 N. H. 47. Either the deceased depositor has not done enough to satisfy the classical doctrine of a gift *inter vivos* or, if he has, he is charged with violating the Statute of Wills. Refreshing exceptions to this result have been few and far between. *Smith* v. *Savings Bank*, 64 N. H. 228; *Burns* v. *Nolette*, 83 N. H. 489. One reason for this situation is that the doctrine of gifts *inter vivos* is not flexible enough to work effectively when applied to the modern joint bank account as used today. The only successful surviving depositor is very apt to be the one that this court does not get its hands on.

Even if it be conceded that Harry did not prove a valid *inter vivos* gift, he should recover as a donee beneficiary of the contract between the bank and the decedent. While this terminology of the Restatement of Contracts has not been adopted in this state (N. H. anno. Restatement, Contracts, *s.* 133 1, a), the rights of donee beneficiaries have been recognized and enforced in equity. *Toner* v. *Long*, 79 N. H. 458; *Knox* v. *Perkins*, 86 N. H. 66. The contract between the bank and the decedent gave Harry a present interest in the joint bank account. The interest being beneficial and without burdens or conditions was presumed to be accepted. *Frazier* v. *Perkins*, 62 N. H. 69. The fact that Harry did not personally sign the contract or that he may have been unaware of it is immaterial as a legal matter. "No assent by a donee beneficiary to the contract or knowledge on his part of its existence is necessary to give him a right of action on it." Restatement, Contracts, *s.* 135, *comment a; Barton* v. *Association*, 63 N. H. 535; 1 Scott, Trusts, *s.* 36; 1A Bogert, Trusts and Trustees (1951), *s.* 171. The contract between the decedent and the bank was a valid one. It expressly provided that Harry should have the proceeds if he survived and there is no logical reason why this right should not be enforced. *Burns* v. *Nolette*, 83 N. H. 489, 493; see anno. 14 A. L. R. (2d) 953, 954.

The theory underlying the rights of a donee beneficiary of a joint bank deposit has been well stated in a recent authoritative treatise (4 Corbin, Contracts, s. 783 (1951)) as follows:

"Suppose, thirdly, that A deposits money, or transfers an existing deposit, to the joint credit of A and C, each to have the power to draw against the account, and the whole to go to the survivor on the death of either. . . . The fact that in these cases A as well as C has power to draw should make no difference except so far as A may exercise this power before his death. C's right as beneficiary that the bank shall honor his drafts is merely conditional on A's not having drawn ahead of him.. Nearly all the cases dealing with this problem have reached the result that C gets all the money remaining after A's death; but the analysis is of various inconsistent sorts. Nearly always the discussion is in terms of gifts of property. Sometimes a trust theory is invoked. Sometimes the beneficiary is regarded as a promisee. Rarely has the third party been regarded as the beneficiary of a contract between A and the bank. This is due either to insufficient analysis or to the uncertainty and conflict that until recently existed in third party beneficiary law. In all such cases, so long as there is no fraud on A's creditors, C should get the money that A has not drawn out, either as an assignee, a promisee, the beneficiary of a trust, or the beneficiary of the banking debtor's promise to the depositor. The fact that the promisee may have retained a power to revoke should be held to be immaterial, inasmuch as any joint depositor has power to terminate the other party's right against the bank by withdrawing the whole deposit. Of course, the beneficiary has power to do the same thing with respect to the donor."

Today it is legal in this state for a person, without complying with the Statute of Wills or the requirements of a gift *inter vivos*, to make another a donee of United States Savings bonds, the beneficiary of a pension fund or of a life insurance policy. This has been accomplished without the benefit of legislation. It is not necessary that the donee beneficiary sign any contract or that he have any knowledge of the benefits that are to accrue to him in the future. The person who pays for this contract may with impunity reserve the right to change the beneficiary, to assign his rights, to borrow against it, to receive the income and to surrender it for cash. In many states a depositor may deposit money in a bank in trust for a beneficiary and retain complete control over the deposit during his life without defeating the beneficiary's right to the deposit on

his death. *Matter of Totten*, 179 N. Y. 112; anno. 168 A. L. R. 1324; 1 Scott Trusts, *s.* 58.3; 68 Banking Law Journal 34 (1951). The analogy of these situations to the present case is not a strained one. In a sense joint bank accounts are substitutes for a will or a portion of a will as well as a substitute for gift which passes a present interest but may not become fully effective until death. Since they can be sustained under the contract theory (*Burns* v. *Nolette*, 83 N. H. 489) without defrauding creditors, the state or a spouse, this satisfies the evils which the Statute of Wills seeks to prevent. Accordingly it is submitted there is logic in upholding them to say nothing of public policy that may be jeopardized by not doing so. 38 Harv. L. Rev. 243, 245; 51 Yale L. J. 1, 39; 4 Corbin, Contracts (1951) *s.* 782, *pp.* 86, 87.