Cheshire,
No. 4236.

NAPOLEON COURNOYER *v.* MONADNOCK SAVINGS BANK *& a.*

Argued November 3, 1953.

Decided December 21, 1953.

*Howard B. Lane; Faulkner, Plaut & Hanna* and *Ernest L. Monty* (of Massachusetts) (*Mr. Lane* orally), for the plaintiff.

*Walter H. Gentsch* and *Arthur Olson* (*Mr. Olson* orally), for the defendants.

GOODNOW, J.   Both the plaintiff and the defendant administrator of the estate of Louis Cournoyer, claim the proceeds of the two accounts in controversy.   The transfer of all questions of law raised by the pleadings and the agreed statement of facts raises the question of whether the evidence is conclusive upon the issue of title as to either or both of the bank deposits.

On August 27, 1935, Louis Cournoyer, a resident of Jaffrey, was the sole owner and holder of deposit book number 3584 in the defendant bank.   On that day, while in Canada, he had his nephew Napoleon Cournoyer, the plaintiff in this action, sign a withdrawal signature card.   This card bears the handwritten number 3584 in the upper left corner and below it the signature of Napoleon Cournoyer on the first line.   The card contains nothing about joint tenancy or payment of any account "to either or the survivor"; in fact, neither the word "bank," the name of a bank nor any reference to any bank account appears on the card other than the number referred to.   It does provide spaces in which the plaintiff noted his residence, the place and date of his birth, the names of his parents and wife and his occupation.   On the bottom line opposite the printed words "Deposited by" appears the signature of Louis Cournoyer.   After its completion, this card was taken by Louis Cournoyer to the bank and at his request, the name of Napoleon Cournoyer was entered on book number 3584 and the words "joint account, either or the survivor in the whole" were added to the book "so that either Louis Cournoyer or Napoleon Cournoyer could withdraw funds from" that account. Thirteen years later, on September 16, 1948, Louis Cournoyer, who was also the sole owner and holder of deposit book number 9624 in the same bank, had the bank enter the name of Napoleon Cournoyer on that book and add the same notation as to joint account for the same purpose.   Napoleon Cournoyer did not sign

any withdrawal signature card in connection with book number 9624 and there is no evidence that he ever knew that his name had been added thereto but the card record of the bank to which the name of Napoleon Cournoyer was added has a notation "see 3584 for signature." During the lifetime of Louis Cournoyer, both books remained in his possession and Napoleon Cournoyer never had physical possession of either of them. The money for these deposits was furnished entirely by Louis Cournoyer and had not been withdrawn at the time of his decease. Napoleon never made any deposits in or withdrawals from either account. One of the by-laws of the bank provided that moneys "may be paid . . . to depositors . . . on presenting the original deposit book."

The plaintiff claims no rights under Laws of 1953, c. 162, and admits that as to account number 9624, the facts are such that the decisions of this court in *Nashua Trust Co.* v. *Mosgofian,* 97 N. H. 17 and *Packard* v. *Foster,* 95 N. H. 47, are controlling unless those cases are to be overruled. No reason for such action is advanced which has not previously been considered and we are of the opinion that they should not be overruled. The decision as to that account must be in favor of the administrator of the estate of Louis Cournoyer.

As to account number 3584, the facts differ from those in *Nashua Trust Co.* v. *Mosgofian, supra,* in one respect. The person whose name was added to the account, Napoleon Cournoyer, signed a withdrawal signature card and the bank, upon the later delivery of that card to it by the original depositor, Louis Cournoyer, and at his request, added Napoleon's name to the account and labeled it "joint account, either or the survivor in the whole." In discussing this account it is asserted on behalf of Napoleon that the card which he signed constituted an agreement by him with the bank and that he knew of the terms under which his uncle later established this account and assented thereto, although these facts do not appear in the record. It is claimed by Napoleon that on the basis of these additional facts it must be concluded that a contract was made between himself, Louis and the bank under which "a joint account with right of survivorship was established.

That a joint tenancy in a bank account can be created in this state is not open to question. *Dover &c. Bank* v. *Tobin,* 86 N. H. 209; *Burns* v. *Nolette,* 83 N. H. 489. When such a tenancy exists, either by gift or by contract, the rights of the survivor do not

spring into being because of the death of the other tenant but arise by virtue of the rights created and existing during the lifetime of the payees, in the same manner as a joint tenant in real estate takes as survivor by virtue of the conveyance creating the estate which was made and existed during the lives of the grantees. As in the case of real estate, a valid joint tenancy in a bank account is created when the property acquires not only the characteristic of survivorship which is distinctive of such a tenancy but is held by the named payees with equal rights to the enjoyment and alienation of their interests in it during their lives. See *Mulvanity v. Nute*, 95 N. H. 526. When the name of another is added to a bank account and it is made payable to either payee or the survivor at the request of the original depositor, a joint tenancy by gift may be established by the later delivery of the book to the person whose name has been added, that act of delivery with the requisite intent constituting a sufficient transfer to that person of those present rights required for the creation of a joint tenancy. *Burns* v. *Nolette, supra,* 494. In the case at bar, whether a contract was made under which Napoleon Cournoyer secured a right of withdrawal which was enforceable during the lifetime of Louis is determinative of his present claim to the account as surviving joint tenant.

Considering the situation as it existed during Louis' lifetime, the plaintiff contends that it is a required conclusion that Napoleon, by signing the card, promised the bank to be bound by its by-laws; that Louis made a similar promise to the bank; that the bank promised both Louis and Napoleon that it would pay the account to either of them during their lives and to the survivor upon presentation of the deposit book and that the mutual exchange of these promises, each of which was consideration for the others, constituted a contract of joint tenancy. This position overlooks the importance which attaches to the possession of the deposit book in cases of this nature. The bank did not simply agree that it would pay the account to Louis or Napoleon during their lives but that it would do so only if the one wishing to withdraw presented the original deposit book. Both Louis and Napoleon knew that this condition was a vital part of the bank's agreement and of their respective rights of withdrawal, if they knew the by-laws to which they are said to have agreed. The money which had been deposited in this account had been Louis' property. He had possession of the book at the time the claimed agreement

was made. If it be assumed that no agreement was made as to possession of the book, the plaintiff would have no basis upon which he could have established a right to possession of the book during the lifetime of Louis. *New Hampshire Sav. Bank* v. *Mc-Mullen*, 88 N. H. 123. On the other hand, if it be assumed, from the fact that they both knew that possession or a right to possession was essential to the withdrawal of money from the account, that some agreement was made, it must have either provided that Napoleon could have possession or that he could not. There is no evidence that the book was so kept as to be equally available to both Louis and Napoleon as was the case in *Chippendale* v. *North Adams Savings Bank*, 222 Mass. 499, relied on by the plaintiff, nor is there any evidence of an agreement by Louis, either expressly or by permitting Napoleon to take the book and make withdrawals from the account, that he would give the possession of it to Napoleon on demand or under any other circumstances. In the complete absence of evidence of any agreement by Louis, the original depositor, that he would relinquish his possession of the book to Napoleon, or that Napoleon was to have any interest in the account during Louis' lifetime, his continued exclusive possession and control of the book compels the conclusion that if an agreement was made it provided that possession should remain with Louis so long as he wished to retain it.

If Napoleon's signing of the card constituted a promise by him to be bound by the by-laws of the bank, it was conditioned by his agreement with Louis that withdrawals by him would depend upon whether possession of the book for that purpose was granted to him by Louis. The stipulation of the parties that the signing of the card and its delivery to the bank were done "so that either Louis Cournoyer or Napoleon's Cournoyer could withdraw funds from" the account adds nothing to indicate any agreement by Louis as to relinquishment of his possession of the book unless he was disposed to do so. Napoleon had no right to withdraw money from the account without possession of the book. This he never had and the evidence before us indicates no basis upon which he could have secured that possession as a matter of right during Louis' lifetime. The bank promised to pay him if he had the book but his failure to acquire possession or a right to possession of the book under an agreement with Louis barred him from an interest in the account during Louis' lifetime as effectively as if he had never signed the card or knew nothing of the account. *Nashua*

*Trust Co.* v. *Mosgofian, supra.* The situation is not that which existed in *Burns* v. *Nolette, supra,* 494, on which the plaintiff relies, where the rights of each payee were subject to being substantially defeated by the other and the reasoning of that case is not applicable here where Napoleon never acquired any rights and never had any power to affect Louis' rights during his lifetime. We conclude, on the facts before us, that no rights in Napoleon were established by contract as to account number 3584 during the lifetime of Louis, and that the decision as to this account must also be in favor of the administrator of the estate of Louis Cournoyer.

*Judgment for the defendant.*

KENISON, C. J., concurred specially; DUNCAN, J., concurred in the result; the others concurred.

KENISON, C. J., *concurring specially*: The views expressed in the dissenting opinion in *Nashua Trust Co.* v. *Mosgofian* 97 N. H. 17, 20, 23, not having been adopted then or now by this court I feel bound by the majority opinion in that case and concur solely for that reason.

ON REHEARING. After the foregoing opinion was filed, the plaintiff moved for rehearing as to account 3584, waiving any question affecting account 9624. The motion was granted, and arguments were heard on February 3, 1954.

*Howard B. Lane; Faulkner, Plaut & Hanna* and *Ernest L. Monty* (of Massachusetts) (*Mr Hanna* orally), for the motion.

*Walter H. Gentsch* and *Arthur Olson* (*Mr. Olson* orally), opposed.

DUNCAN, J. The essence of the plaintiff's position on rehearing is contained in his statement that he relies upon no "theory of gift, with the attendant requirement of delivery of possession of the [account] book," but rather "on the contract which takes the place of that requirement." *Malone* v. *Walsh,* 315 Mass. 484, 486, is relied upon for the propositions that: "Delivery of the bank book would not be essential since the contract takes the place of the delivery ordinarily required. . . . Furthermore, a

transfer of this nature is not a gift of the deposit as such, but rather a gift of the interest therein created by the contract."

The argument is made that the plaintiff, with the decedent, was a party to a contract with the bank by which he acquired immediate rights in the account, now entitling him, as the survivor, to require payment of the account. In support of this contention, the plaintiff emphasizes the fact that the records of the bank showed that the account was labeled "joint account, either or the survivor in the whole," and that the agreed statement of facts recites that the plaintiff's name was entered on the account book with the decedent's "so that either . . . could withdraw funds . . . "

We have no difficulty in concluding that the arrangement made by the decedent with the bank obligated the bank to permit withdrawal from the account by the plaintiff provided he presented the account book as required by its rules. The real question in issue is what were the respective rights of the decedent and the plaintiff *inter se*, after the arrangements made with the bank were completed. We find in the facts of the case nothing which serves to establish a beneficial interest in the plaintiff.

It is settled law in this jurisdiction that "a deposit by one in the name of himself or another, or the survivor, is unavailing in and of itself to give the other any ownership or interest in the account." *New Hampshire Sav. Bank* v. *McMullen,* 88 N. H. 123, 126; *Nashua Trust Co.* v. *Mosgofian,* 97 N. H. 17, 19. This is because the action of the depositor is an equivocal act. "It is apparent that any one of several conclusions as to the intention of the decedent might be reached. The interest sought to be conferred . . . could be . . . a present interest or one to take effect only upon the death of the donor." *Burns* v. *Nolette,* 83 N. H. 489, 491. If it was the latter, the arrangement was "testamentary in character, and void under the statute of wills." *Id.,* 492; *Dover &c. Bank* v. *Tobin,* 86 N. H. 209, 211. If the former, but the decedent retained "a right . . . to the funds withdrawn by the donee," there was no such "divesting of the donor's control" as would establish a valid transfer of ownership. *Burns* v. *Nolette, supra,* 492. A transfer or creation of equal power to draw from the fund *"and appropriate the money withdrawn"* is what must be shown. *Id.,* 494, (Emphasis supplied). The burden of overcoming the "presumption in this jurisdiction against an intention to create joint interests in personal property" is upon the plaintiff. *Dover &c. Bank* v. *Tobin, supra,* 210.

If in fact it was the decedent's intention to confer immediate beneficial rights upon the plaintiff, and not to make a testamentary disposition or merely establish a "convenience account" (see 2 Am. Law of Property, s. 6.4; *New Hampshire Sav. Bank* v. *McMullen, supra,* 126), evidence of that intention must appear, before the plaintiff can prevail. The agreement of the parties that there was a purpose to enable either the decedent or the plaintiff to withdraw the funds, and the evidence that there was a "new contract to pay 'to either or survivor' the balance then shown on the passbook" (*Connolly* v. *Bank,* 92 N. H. 89, 92), fall short of demonstrating a right in the plaintiff to "appropriate the money withdrawn." *Burns* v. *Nolette, supra.* The plaintiff's case lacks evidence of an "expressed intent of the [decedent] that the [plaintiff] should receive the beneficial performance [of the bank's promise] as his gift." 4 Corbin on Contracts 87.

The agreement between the bank on the one hand, and the plaintiff and the decedent on the other could not be found to go beyond the more detailed agreement in writing considered in *Nashua Trust Co.* v. *Mosgofian,* 97 N. H. 17, *supra.* It would have protected the bank in making payment, as would R. L., c. 309, s. 20. It entitled the plaintiff to withdraw the funds by presenting the account book. But there is no evidence of any understanding between the plaintiff and the decedent that the former should be entitled to withdraw and appropriate the funds to his own use, or that he should have any presently vested interest, entitling him to either immediate or future enjoyment of the fund, which might support a demand for the account book as an incident to his rights.

The circumstance that the plaintiff resided and continued to reside in Canada, which he relies upon to show that a "convenience account" was not intended, suggests fully as much that he was not expected to draw upon the account in his own behalf during the decedent's lifetime.

No circumstance points to any understanding that as between the plaintiff and the decedent their rights in the deposit became or were intended to be equal. There was no assignment of any rights by the decedent, and no indication that the bank's promise to pay to the plaintiff was for his benefit and not the decedent's. The equivocation implicit in the bare form of the account is unresolved by the terms of any contract shown. The reality of that equivocation may be illustrated by the conclusion reached

in a note in 53 Col. L. Rev. 103, 116: "The best way to remedy this situation would be legislative remodelling of the entire law of donative bank accounts. There should be a separate type of bank deposit book, stating succinctly the effect to be given the deposit, both during the life of the depositor and after his death, Forms will be needed for at least five types of accounts . . . ."

The recently enacted provisions of Laws 1953, c. 162, were designed to eliminate any question of the right of the survivor of two persons named upon an account such as this one, to ownership and payment of the account "upon the death of either of said persons." They do not apply to this case since the decedent died on June 20, 1951. For the future, accounts governed by this statute are unlikely to present the problems which confronted the plaintiff in this action.

*Former result affirmed.*

February 18, 1954.

KENISON, C. J., concurred for the reason stated in the original opinion.