Strafford,
No. 5077.

MATHEW J. BRENNAN, *Ex'r*

*v.*

HELEN M. TIMMINS.

Argued November 7, 1962.

Decided January 31, 1963.

*Burns, Bryant & Hinchey (Mr. Donald R. Bryant* orally), for the plaintiff.

*Beamis & Davis (Mr. John F. Beamis* orally), for the defendant.

WHEELER, J.   The following facts were agreed upon by the parties:

"On July 8, 1956, Alice F. Hughes died in Marlboro, Massachusetts.   At that time there stood in her name and the name of Helen M. Timmins (her niece), payable to either and the survivor of them as joint tenants, a bank account, #A73959, in Strafford Savings Bank, Dover, New Hampshire.   This account was established July 8, 1955, with a deposit of $9,000, the proceeds of the sale of a house in Dover belonging to Alice F. Hughes.   The account was opened in the name of Alice F. Hughes alone and was made joint on October 11, 1955, with Helen M. Timmins.   A deposit was made in this account of $75 on July 29, 1955.   On August 4, 1955, there was deposited in this account $10,751.28, which was the proceeds of a joint account in the same bank which had stood in the name of Elizabeth Chesley (Alice's sister) and Alice F. Hughes at the time of Elizabeth's death on May 13, 1955. All monies in this account at the death of Alice F. Hughes were contributed by her alone and none was contributed by Helen M. Timmins.

"From October 11, 1955, to January 6, 1956, there were withdrawals of $2,300 from this account by Helen M. Timmins.   All of these withdrawals were to pay bills of Alice or were made with Alice's authorization.

"On May 4, 1956, Alice attached the account by a writ which later was not entered in Court.   On June 25, 1956, she attached the bank account again by a similar writ which was entered and which is the basis for this action.   On May 18, 1956, Alice executed an affidavit (Exhibit #1), and a withdrawal order for the whole account (Exhibit #2), which bears the date of May 21, 1956.   These were filed with the Bank by counsel for Alice (Ex-

hibit #3). Copies were sent at that time to Attorney Lewis Fisher, representing Helen M. Timmins.

"Helen M. Timmins had possession of the bank book at the time of Alice's death and prior thereto at the time when the various papers above mentioned were filed with the Bank. Alice had demanded the bank book from Helen M. Timmins who refused to give it up.

"By agreement of the parties on May 23, 1956, the sum of $8,832.94 was withdrawn from the account and paid over to Alice F. Hughes. This was accepted without prejudice to the claim of Alice F. Hughes, to the whole bank account.

"Alice F. Hughes resided in Dover for many years and lived with her sister, Elizabeth Chesley, in Alice's house, until the death of Elizabeth on May 13, 1955. Following this she resided with Helen Timmins until she entered a hospital in Dover on October 17, 1955. She left the hospital November 6, 1955. She resided with Helen Timmins until November 12, 1955 when she entered O'Hearn Nursing Home in Dover. On February 12, 1956, she left the O'Hearn Home and entered Central Avenue Nursing Home where she remained until March 4, 1956. She then resided with Mathew Brennan, her nephew, at Marlboro, Massachusetts until May 22, 1956, when she entered Massachusetts General Hospital for an eye operation which restored her sight which had been gone for many years. On May 29, 1956, she returned to Brennan's. After a fall, she entered Marlboro Hospital on June 3, 1956, and she died there on July 8, 1956.

"Prior to the withdrawal of the $8,832.94 this bank account in question was the only property which Alice had.

"The basis on which the plaintiff claims the account is that the account was the property of Alice F. Hughes during her lifetime, and that during that lifetime she revoked the joint tenancy nature of the bank account, so that on her death it became a part of her estate.

"The defendant claims that the bank account remained in joint tenancy, despite the efforts of Alice F. Hughes to terminate the joint tenancy, and that on the death of Alice F. Hughes it became the property of Helen M. Timmins by virtue of RSA 384:28-31."

The above sections, enacted as chapter 162 of Laws of 1953, became effective on May 14, 1953. RSA 384:28 reads as follows:

"ON DEATH OF DEPOSITOR. Whenever any account shall be

maintained in any bank doing business in this state in the names of two persons payable to either of such persons, and payable to the survivor of them, the said account shall upon the death of either of said persons become the property of and be paid in accordance with its terms to the survivor, irrespective of whether or not the funds deposited were the property of only one of said persons, and irrespective of whether or not at the time of the making of such deposits there was any intention on the part of the person making such deposit to vest the other with a present interest therein, and irrespective of whether or not only one of said persons during their joint lives had the right to withdraw such deposit, and irrespective of whether or not there was any delivery of any bank book, account book, savings account book, certificate of deposit, or other evidence of such an account, by the person making such deposit to the other of such persons."

Section 31 provides: "CONSTRUCTION. Nothing contained in this subdivision shall be construed to prohibit the person making such deposit from withdrawing or collecting the same during his lifetime, nor shall the fact that such person had the right to withdraw or collect said deposit during his lifetime operate to defeat the rights herein provided for the person or persons surviving such depositor."

Prior to the above enactment pertaining to the distribution of joint accounts, the only regulation of deposits and withdrawals in such accounts was R. L., c. 309, s. 20, now RSA 386:19, which provides that "when a deposit has been made in any savings bank in the names of two persons, payable to either, or payable to either or the survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to either of said persons, whether the other be living or not; and the receipt or acquittance of the person so paid shall discharge the bank for any payment so made."

Such legislation is commonly classified as a bank protection statute which protects the bank in making payments thereunder but does not in any manner affect the actual ownership of the deposit or determine the rights of depositors and those claiming under them. *New Hampshire Sav. Bank* v. *McMullen*, 88 N. H. 123, 127; *Chretien* v. *Duhaime*, 100 N. H. 254, 256; 26 U. Chi. L. Rev. 376, 378; 41 Calif. L. Rev. 596, 605. Under such a statute the deposit by one in the name of himself or another payable to them or the survivor is an equivocal act. *Cournoyer* v. *Bank*, 98 N. H. 385, 391.

Prior to the 1953 statute the respective rights of the parties, during their joint lives, to make withdrawals and to appropriate the moneys withdrawn had to be ascertained from evidence of their intentions and actions. *Nashua Trust Co.* v. *Mosgofian,* 97 N. H. 17, 19. Furthermore on the death of one, the survivor had the burden of showing that he acquired the right to the account under some principle of common law whether by gift inter vivos, contract, trust, or otherwise. *Burns* v. *Nolette,* 83 N. H. 489, 492; *Dover &c. Bank* v. *Tobin,* 86 N. H. 209, 210; *New Hampshire Sav. Bank* v. *McMullen, supra; Packard* v. *Foster,* 95 N. H. 47, 49; *Cournoyer* v. *Bank, supra; Chretien* v. *Duhaime, supra.* This entailed proof of the intention of the depositor to vest the other during their joint lives with a present interest, and of his intention as to the other's right to withdraw and to appropriate any money so withdrawn.

Because of the difficulties surrounding the proof of the intent of the depositor, especially after his death, it had been suggested that "the best way to remedy this situation would be legislative remodelling of the entire law of donative bank accounts. There should be a separate type of bank deposit book, stating succinctly the effect to be given the deposit, both during the life of the depositor and after his death." 53 Colum. L. Rev. 103, 116.

A few months after the enactment in 1953 of RSA 384:28-32 this court made the following statement: "The recently enacted provisions of Laws 1953, *c.* 162, were designed to eliminate any question of the right of the survivor of two persons named upon an account such as this one, to ownership and payment of the account 'upon the death of either of said persons.' " *Cournoyer* v. *Bank,* 98 N. H. 385, 393.

Later in considering a controversy involving joint accounts in *Bradley* v. *State,* 100 N. H. 232, 235, this court said: "The accounts in question were created by the deceased tenant during his lifetime with his own funds and the now surviving tenant had no knowledge of their existence until the day of the co-tenant's death. Formerly, such deposits were not effective to give the survivor any ownership or interest in the accounts . . . . They now, however, become 'the property of . . . the survivor' by virtue of the statute adopted here in 1953 (RSA 384:28-32)."

More recently this court said: "The statute [RSA 384:28] was clearly designed to make the ownership of joint survivorship accounts more certain . . . the statute is clearly remedial in

nature and was a legislative attempt to put at rest the uncertain results attendant on litigation predicated on the theory of gifts . . . The Legislature has expressed in emphatic and clear terms a purpose to make joint bank accounts with rights of survivorship effective and as certain as circumstances will permit." *Parenteau v. Gaillardetz*, 103 N. H. 92, 94, 95.

The language of this court on the purpose and intent of RSA 384:28-32 leaves no room for misunderstanding. Its object is to confer on the survivor, at the death of the depositor, the property right of complete ownership with the attendant right of beneficial enjoyment of an account maintained under the provisions of section 28. It eliminates the burden formerly imposed on the surviving joint tenant to prove the elements of a valid gift or of an enforceable agreement. *Parenteau v. Gaillardetz, supra;* 26 U. Chi. L. Rev. 376, 395. Had Alice F. Hughes acquiesced in the maintenance of the account as a joint account up to the time of her decease, the defendant Helen M. Timmins' right to the balance would clearly have become absolute at Alice's death. *Parenteau v. Gaillardetz*, 103 N. H. 92.

In this case however the depositor Alice, now deceased, during her lifetime took upon herself the burden of showing that the defendant Helen Timmins had no beneficial interest in the account, by bringing suit against her, alleging that the proceeds of the account were wholly the property of the depositor Alice, and that Helen was wrongfully withholding the bank book. Before the action could be tried, Alice died and her executor now seeks to maintain the action.

Although it is agreed that the plaintiff executor claims the account upon the basis "that the account was the property of Alice during her lifetime," the defendant Helen does not agree that the plaintiff's claim is correct, and in effect takes the position that under RSA 384:31 this is not material, because at Alice's death, by virtue of RSA 384:28 ownership of the account became vested in Helen, as survivor.

It is plain that by the statute the survivor has been relieved of any burden of establishing a gift or contract rights in order to overcome the presumption against joint tenancies which prevailed before the statute was enacted. *Dover &c. Bank v. Tobin*, 86 N. H. 209, 210, *supra*. However the statute, by its terms, had no effect upon any right of Alice to withdraw or collect the account during her lifetime. RSA 384:31. It also provided that the fact

or existence of such a right in Alice should not defeat the rights provided by the statute for Helen as survivor (*Id.*) if "upon the death of either" the account was being maintained in the names of both, payable to either and the survivor. RSA 384:28.

The agreed facts indicate that Alice not only had the right to withdraw the account during her lifetime, but also sought to exercise that right during her lifetime, by doing all that it was possible for her to do toward that end. See *John Hancock Insurance Co.* v. *Sheridan*, 104 N. H. 216, 218. They indicate further that she was unsuccessful in exercising her admitted right because "she lacked the power to do so by not being in possession of the pass book"; and that she demanded the book of the defendant "who refused to give it up."

However the agreed facts shed no light on the question of whether Alice, had she succeeded in her attempt to collect the account, would have been entitled as against the defendant to the beneficial use and enjoyment of the proceeds of the account after withdrawal, free from any right or interest of the defendant. *Cournoyer* v. *Bank*, 98 N. H. 385, 392, *supra*. This issue remains to be determined by the Trial Court.

If it is found that the defendant Helen's refusal to give up the account book on the demand of Alice was without right or justification, so as to constitute wrongful or inequitable conduct upon the part of Helen, and that but for this conduct Alice could and would have withdrawn the entire account, and thereafter would have been entitled to the beneficial enjoyment of its proceeds, then Helen is not entitled to the account. Helen may not acquire a right under the statute solely because her wrongful or inequitable conduct caused the account to become subject to the operation of the statute. *Harrington* v. *Emmerman*, 186 F. 2d 757 (D.C. Cir. 1950). See *Swofford* v. *Swofford*, 327 Ill. App. 55. It does not matter whether this result is reached on the ground that a constructive trust in favor of Alice's estate will be imposed on the account to prevent unjust enrichment (*Patey* v. *Peaslee*, 101 N. H. 26, 29) or because the joint account will not be considered to have been lawfully "maintained" as such upon the death of Alice, within the meaning of RSA 384:28.

Although the declaration in the writ brought by Alice alleged that Helen was "wrongfully withholding" the bank book, the mere allegation was not of itself sufficient to deprive Helen of an interest in the account as a matter of law. See *Sheridan* v.

*Lucey,* 395 Pa. 306. The burden is on the plaintiff to prove that although Helen was the survivor of the two persons in whose names the joint account stood, Alice was entitled during her lifetime to withdraw and collect the account and to appropriate the proceeds to her own use and would have done so but for the wrongful or inequitable conduct on the part of Helen in withholding the passbook. See *Kendall's Adm'r* v. *Roseberry,* 120 Vt. 498; *Potter* v. *Chamberlin,* 344 Mich. 399.

*Remanded.*

BLANDIN, J., dissented; the others concurred.

BLANDIN, J., *dissenting*: I approve the sensible objectives of RSA 384:28-31, but I am unable to concur in the application of the statute made by the majority opinion to the record before us. Without again reciting the agreed facts, it appears clear to me that, considered with the briefs, they lead to certain inescapable conclusions.

The first is that Alice, during her lifetime, maintained full ownership of the account with an unqualified right to withdraw and use all the proceeds at any time. The plaintiff, in her behalf, so asserts in his brief, and the defendant makes no denial. There is not a scintilla of a suggestion in the defendant's brief that she had any interest, by gift or otherwise, in the deposit while Alice lived. Nor does the defendant claim that she had any right to withhold the bank book from Alice for any reason during Alice's lifetime. On the contrary, the defendant even agrees in her brief that while alive, Alice had the right to "withdraw" and "collect" all the funds, and adds that "RSA 384:31 guarantees the right *during life time* . . . " — which it does. It therefore appears conclusive to me that the plaintiff has sustained his burden of proving that Alice transferred no interest during her lifetime to the defendant.

The defendant does not dispute this conclusion. In the agreed facts and in her brief, she rests her case upon the sole ground that since she successfully withheld the book from Alice during the latter's lifetime, the statute automatically awarded the proceeds to her upon Alice's death. That such an interpretation of RSA ch. 384 would enable an obdurate possessor of a joint bank book to defeat rights, which section 31 of the statute carefully preserved to the depositor during her lifetime, and would also encourage

fraud and other inequitable conduct, is too plain to require argument. The majority opinion recognizes that a wrongful withholding of the joint bank book does not cause the account to become subject to the operation of the statute. *Harrington v. Emmerman*, 186 F. 2d 757 (D.C. Cir. 1950). It also holds that Alice did "all that it was possible for her to do" to recover the book. See *John Hancock Insurance Co. v. Sheridan*, 104 N. H. 216, 218.

Viewing the record in its entirety, I find no warrant for the pivotal assertion in the majority opinion that "the agreed facts shed no light on the question of whether Alice, had she succeeded in her attempt to collect the account, would have been entitled as against the defendant to the beneficial use and enjoyment of the proceeds of the account after withdrawal, free from any right or interest of the defendant." Indeed, it seems to me the record makes it abundantly plain that Alice had such a right and, as previously stated, that her burden of proving it under RSA ch. 384 is firmly established.

In summary, the majority opinion gratuitously suggests to the defendant that she might have had a right to the deposit or a portion of it during Alice's lifetime. Such a right she not only never has claimed, but has admitted she did not possess. I believe that the result reached by the majority opinion is without support in the record.

I would give judgment for the plaintiff.