300

Coos,
No. 5499.

J. L. Blais, *Adm'r*

*v.*

Colebrook Guaranty Savings Bank *& a.*

Argued June 7, 1966.
Decided June 30, 1966.

*J. L. Blais* ( by brief and orally ), as administrator, pro se.

*George H. Keough* ( by brief and orally ), for the defendant Robinson.

*Frederick J. Harrigan* for the defendant bank, filed no brief.

Duncan, J. In June 1945 the plaintiff's intestate opened a savings account with the defendant bank. From the time it was opened, until the death of the depositor on May 28, 1965, the

account stood in his name. In the interim he alone made deposits and withdrawals, and at his death the account stood at $16,568.31. At some time between August 1, 1960, and August 5, 1963, at the depositor's request, an employee of the bank typed upon its ledger card for the account: "payable on death to Lucille Robinson, 478 Hillsboro St., Berlin, N. H." A similar notation was made upon the signature card, which bore the depositor's signature. The defendant Robinson was not present when the notations were arranged for, nor did she sign a signature card until May 28, 1965, following the death of the depositor on that day. The account book remained in the possession of the depositor at all times until his death. It also bore the same notation of "payable on death to Lucille Robinson." The defendant Robinson learned of the existence of the account by means of a notice from the bank examiners requesting presentation of the book for verification. Following the depositor's death, she took possession of the book upon finding it in the depositor's apartment on the day of his death.

The defendant claims ownership of the account by virtue of the provisions of RSA 384:28-32, enacted in 1953, *c.* 162. RSA 384:28 under the subtitle Distribution of Joint Accounts, provides in part as follows: "On death of depositor. Whenever any account shall be maintained in any bank doing business in this state in the names of two persons payable to either of such persons, and payable to the survivor of them, the said account shall upon the death of either of said persons become the property of and be paid in accordance with its terms to the survivor. . . . "

The statute was enacted as an act "relating to joint accounts and distribution thereof," following a long series of cases dealing with such accounts, commencing with *Burns* v. *Nolette*, 83 N. H. 489, and ending with *Nashua Trust Co.* v. *Mosgofian*, 97 N. H. 17. See also, *Cournoyer* v. *Bank*, 98 N. H. 385; *Chretien* v. *Duhaime*, 100 N. H. 254; *Brennan* v. *Timmins*, 104 N. H. 384; 105 N. H. 464. It was "designed to eliminate any question of the right of the survivor of two persons named upon [a joint account] to ownership and payment of the account 'upon the death of either of said persons.'" *Cournoyer* v. *Bank, supra.* 98 N. H. 385, 393; *Parenteau* v. *Gaillardetz*, 103 N. H. 92; 1 N. H. B. J. 40, 43. As was pointed out by Kepner in an article "Joint Bank Account Muddle," in 26 U. Chi. L. Rev. 376, 381, the statute creates "a new technique for transmitting property. . . . Unless there is fraud or undue influence, the

making of the deposit in statutory form is all that is required to effectuate the gift. " *Id.*, 395-396.

The difficulty with the defendant's position is that the account in question in this case was not an account such as the statute describes. It was not an account " maintained . . . in the names of two persons payable to either of such persons, and payable to the survivor of them, " within the meaning of the statute. Rather it was an account maintained in the name of the depositor alone, payable to him alone during his lifetime, and at his death to another. To use the language of the commentator in the note " The Poor Man's Will, " in 53 Colum. L. Rev. 103, 116, 117 the account falls into the third category of the " five types of accounts " ( *Cournoyer* v. *Bank*, 98 N. H. 385, 393, *supra* ) as to which the writer recommended that statutory provision be made: an account " in the name of the depositor, payable on death to a named individual — for testamentary purposes. " See also, Jones, The Use of Joint Bank Accounts, 17 U. Pitt. L. Rev. 42, 53.

Since the account as maintained by the plaintiff's intestate did not meet the requirements of the statute, the statute was not effective to vest title in the defendant Robinson. The Trial Court correctly ruled that " no effective joint account [ was ] created " ( see *Leib* v. *Genesee Merchants Bank*, 371 Mich. 89 ), and that the notation endorsed upon the ledger, the signature card, and the passbook, was an invalid " attempt to make a testamentary disposition. " RSA 551:1, 2. *Burns* v. *Nolette*, 83 N. H. 489, 492; *Towle* v. *Wood*, 60 N. H. 434.

*Exception overruled.*

KENISON, C. J., dissented; the others concurred.

KENISON, C. J., *dissenting*: If the literal construction of RSA 384:28-32 by the majority is permissible taken by itself, it overlooks the over-all intent of the Legislature to make the poor man's will effective and not an illegal exercise of frustrated intention. RSA 384-A:1-4 ( supp ); Laws 1955, 319:1-4, legalizing trust deposits in banks, although primarily for the protection of the bank, indicate an intention to make the deposits valid and effective. Independently of the statutes, the transaction in this case can be sustained on contract principles or as a Totten trust. 1 Scott, Trusts ( 2d *ed.* ) *s.* 58.3 1 Bogert, Trusts & Trustees ( 2d *ed.*

1965 ) *s.* 47; Restatement ( Second ), Trusts, *s.* 58, *comment* b; *Matter of Totten*, 179 N. Y. 112; *In re Petralia's Estate*, 32 Ill. 2d 134 ( 1965 ); *Nashua Trust Co.* v. *Mosgofian*, 97 N. H. 17, 22, 23 ( dissenting opinion ). In the meantime the " only successful surviving depositor is very apt to be the one that this court does not get its hands on. " *Nashua Trust Co.* v. *Mosgofian*, 97 N. H. 17, 21, *supra.*