Hillsborough County Probate Court, No. 6245.

*In re* WLADYSLAW WSZOLEK ESTATE.

September 29, 1972.

*Joseph J. Betley,* by brief and orally, for plaintiff, Doris Dulak.

*McLane, Carleton, Graf, Greene & Brown* and *Robert W. Upton II* (*Mr. Upton* orally), for Jennie M. Scanlon, guardian of Wladyslaw Wszolek.

LAMPRON, J. Petition by Jennie M. Scanlon, guardian of Wladyslaw Wszolek, for certification by the probate court under RSA 547:30 of certain questions of law arising from a petition of Doris Dulak objecting to the allowance of her first and final account. Upon an agreed statement of facts the following questions of law were reserved and transferred by *Copadis,* J.

"1. Had Wladyslaw Wszolek made a completed gift to Doris Dulak of the funds represented by savings account No. 311291 at the time of the appointment of Jennie M. Scanlon, his guardian?

"2. Did the Guardian ... have the power to withdraw any of the funds from ... [this account] during Wladyslaw Wszolek's lifetime?

"3. Was the Guardian's withdrawal of the entire balance ... prior to [her ward's] death proper and valid and if so were Doris Dulak's rights as a named cotenant of said savings account thereby terminated?"

On April 4, 1963, Wladyslaw Wszolek was the owner of a savings account No. 311291 of the Amoskeag Savings Bank in Manchester to which he had contributed all the funds. On that day he withdrew therefrom $3000 to loan to Doris Dulak, his granddaughter. On October 3, 1963, Doris repaid him the $3000 which he deposited in the above account. On the same day the following words were added to that savings account book: "or Doris Dulak" making it read "Wladyslaw Wszolek or Doris Dulak." A signature card entitled "joint account 311291" was also executed on the same date by Wszolek (by fingerprint) and by Doris. It provided in part that they covenanted and agreed with the bank "that it may pay over any or all moneys deposited to the credit of this account to either of us or to the survivor of us" and that they assented to the bylaws and rules of the bank. One of these rules printed in the bank book provided that no withdrawals will be allowed without the presentation of the deposit book.

The parties agreed that at all material times the source of all funds in this account were Wszolek's, that he had possession of the savings account book and that at no time did Doris have possession of the book or have access to it.

On October 6, 1964, Jennie M. Scanlon, a daughter of Wszolek, was appointed guardian over him. On October 26 she exhibited her appointment to the bank and after posting an indemnity bond she withdrew $6,094.12 which was all the money in the account in question and closed it. Wszolek died on November 26, 1964. As his guardian, Jennie had expended from the moneys so withdrawn $244.29 for his support and necessaries and $278.93 as expenses of administration. In December 1964 Jennie filed her first and final account as guardian which showed as assets the above bank deposit of $6,094.12, also cash on hand of $2,047.26, and cash from social security checks in the amount of $118.00. Doris petitioned the probate court asking that it disallow the account as she was the joint owner of the savings account

and that the account be restored as it stood before the funds were withdrawn by Jennie.

Wszolek's will dated May 10, 1961, was probated on November 1, 1966. After a gift of $100 to his son, it bequeathed the remainder of his estate in equal shares to his daughters Jennie Scanlon, Stella Nolet and Helen Gelinas. Jennie was named executrix.

We turn to the first certified question which is whether Wszolek had made a completed gift to Doris Dulak of savings account No. 311291 at the time Jennie Scanlon was appointed his guardian.

Prior to the enactment, effective May 14, 1953, of RSA 384:28-32, pertaining to the distribution of joint bank accounts, the law was well established in this jurisdiction that a deposit by one in the name of himself and another, or the survivor, was unavailing in and of itself to give the other any ownership or interest in the account. *New Hampshire Sav. Bank* v. *McMullen*, 88 N.H. 123, 185 A. 158 (1936); *Nashua Trust Co.* v. *Mosgofian*, 97 N.H. 17, 79 A.2d 636 (1951). The burden was on the claimant to show that a joint interest in the account was intended and properly created. *Dover & c. Bank* v. *Tobin*, 86 N.H. 209, 166 A. 247 (1933). If the interest was claimed on the basis of a gift inter vivos the donee had to prove a manifest intention of the donor-depositor to vest the donee during their joint lives with a present interest in the account as well as an unconditional delivery and acceptance of the thing given. *Nashua Trust Co.* v. *Mosgofian*, 97 N.H. 17, 19, 79 A.2d 636, 637 (1951). The latter requirement could be evidenced by proof that the donee had the deposit book or access thereto so that he could withdraw money in accordance with the bank regulations and appropriate the money so withdrawn. *Cournoyer* v. *Bank*, 98 N.H. 385, 389, 102 A.2d 910, 913 (1953); *Brennan* v. *Timmins*, 104 N.H. 384, 388, 187 A.2d 793, 796 (1963).

RSA 384:28 reads as follows: "On Death of Depositor. Whenever any account shall be maintained in any bank doing business in this state in the names of two persons payable to either of such persons, and payable to the survivor of them, the said account shall upon the death of either of

said persons become the property of and be paid in accordance with its terms to the survivor, irrespective of whether or not the funds deposited were the property of only one of said persons, and irrespective of whether or not at the time of the making of such deposits there was any intention on the part of the person making such deposit to vest the other with a present interest therein, and irrespective of whether or not only one of said persons during their joint lives had the right to withdraw such deposit, and irrespective of whether or not there was any delivery of any bank book, account book, savings account book, certificate of deposit, or other evidence of such an account, by the person making such deposit to the other of such persons."

This statute, and similar ones in other States, have been classified as "special statutes" that specifically allow the donee to take the balance remaining in the account by precluding any investigation of the donor's intent after the donor's death. 60 Mich. L. Rev., 972, 990 (1962); 41 Calif. L. Rev. 596, 608-12 (1953). In other words, such a statute establishes property rights in the survivor authorizing the payment of the balance to him without a showing of a donative intent on the part of the party furnishing the funds, or delivery of the pass book or access thereto. 26 U. Chi. L. Rev. 376, 380-89 (1959). It was intended "to put at rest the uncertain results attendant on litigation predicated on the theory of gifts." *Parenteau* v. *Gaillardetz,* 103 N.H. 92, 95, 166 A.2d 112, 114 (1960). It has relieved the surviving joint tenant of the burden of establishing a gift inter vivos. *Brennan* v. *Timmons,* 104 N.H. 384, 389, 187 A.2d 793, 797 (1963).

However, by its title and express terms RSA 384:28-32 is effective only to confer on the survivor, at the death of the depositor, the property right of complete ownership if the account has been maintained as a joint account until that event occurs. *Brennan* v. *Timmins supra; Blais* v. *Colebrook Savings Bank,* 107 N.H. 300, 220 A.2d 763 (1966). It becomes operative only with respect to the amount remaining in a joint account upon the death of one of the parties. *Sadofski* v. *Williams,* 60 N.J. 385, 392, 290 A.2d 143, 147 (1972). It does not affect an account terminated before death nor does it control the inter vivos rights of the parties. *Id;* RSA 384:31;

*see Grodzicki* v. *Grodzicki,* 154 Conn. 456, 462, 226 A.2d 656, 659 (1967).

As the account in this case had been terminated before the death of Wszolek who had created it with his own funds, the claimant Doris Dulak had to prove an inter vivos gift by him to her of an interest in the joint account without help from RSA 384:28 but in accordance with the common law previously detailed. *See Brennan* v. *Timmins,* 104 N.H. 384, 390, 187 A.2d 793, 797 (1963). The agreed statement would not warrant a finding that Doris had sustained the burden of overcoming the presumption against joint tenancies which prevailed before the statute was enacted and which would prevail in this instance. The parties have agreed that Wszolek had possession of the bank book at all times and that Doris never had access to it at any time. The agreed facts could support a conclusion that the depositor intended the account to be for convenience as readily as that it was intended as a gift. We hold that on the agreed facts Doris did not sustain the burden of proving the required donative intent and delivery which are essential to the establishment of a gift inter vivos. Our answer to the first question is "No" Doris did not prove that Wszolek had made a completed gift to her of account No. 311291 at the time of the appointment of Jennie Scanlon as his guardian.

The remaining questions (2) and (3) are whether Jennie as guardian had the power to withdraw funds from this account; and whether her withdrawal of the entire balance was proper and valid and terminated Doris' rights in the bank account. The authorities appear to be in general agreement that if at the time of the appointment of the guardian over a joint tenant the other tenant had in fact acquired a present interest in the account by gift inter vivos, contract, or otherwise, then the right of the guardian to withdraw part or all of the joint account is subject to certain limitations. *Howard* v. *Imes,* 265 Ala. 298, 90 So. 2d 818 (1956); *Boehmer* v. *Boehmer,* 264 Wis. 15, 58 N.W.2d 411 (1953); 41 Calif. L. Rev. 596, 619, 627, 633 (1953); *see* Annot., 62 A.L.R.2d 1091 (1958). In such cases the guardian's authority is limited to withdrawing only whatever funds are necessary for her ward's maintenance. She does not have the right to change

the nature of the other joint tenant's interest by merely closing out the account. *Howard* v. *Imes supra; Boehmer* v. *Boehmer supra; Drain* v. *Brookline Sav. Bank,* 327 Mass. 435, 99 N.E.2d 160 (1951). In these, and similar cases, relied on by Doris there existed at the time of the appointment of the guardian a present interest in the other joint tenant which had to be protected. That is not the situation in the instant case as we have held in our answer to question No. 1 that on the agreed facts Doris had failed to establish that she possessed a present inter vivos proprietary interest in the account at the time the guardian was appointed.

However, if the account had remained in the joint names until the death of Wszolek the balance would have become the property of Doris by virtue of RSA 384:28. Hence, when Jennie was appointed guardian of Wszolek, Doris had a contingent interest in the remaining balance if left undisturbed by the guardian. Under our law the guardian had the duty with regard to any action taken by her affecting this account to try to place herself as nearly as possible in the position of the ward and to take such course of action as he would probably have taken. *See Hogan* v. *Roche,* 95 N.H. 368, 370, 63 A.2d 794, 795 (1949); *Morse* v. *Trentini,* 100 N.H. 153, 121 A.2d 563 (1956); 39 Am. Jur. 2d Guardian and Ward s. 102 (1968). There is no doubt that if funds from this account had been needed for the welfare of the ward, the guardian had the duty and could have withdrawn therefrom whatever was required. However, in managing the assets of her ward, Jennie, as guardian, had a secondary duty to consider the interest of Doris in the joint account. *See Devine* v. *Cote,* 109 N.H. 235, 238, 248 A.2d 77, 80 (1968); *Morse* v. *Trentini supra.*

The agreed facts show that during the approximately five weeks of her guardianship, Jennie spent $244.29 for the support of her ward. She also paid out of his estate $278.93 for the expenses of administration. Her guardian's account reveals that the ward had $2,047.26 in cash when she was appointed in addition to the balance in the joint account of $6,094.12. On the record no necessity has been shown to withdraw from the joint account for the welfare of the ward. If the guardian's withdrawal and closing out of the

joint account were held to have terminated the account Doris would lose her right to the balance which otherwise would have become hers at the death of Wszolek. Instead the proceeds of this account would become part of his estate in the residue of which Jennie has a one-third interest by virtue of the deceased's will.

Our answer to questions 2 and 3 is that the guardian being in the possession of the bank book had the power to withdraw part or all of the joint account. However, on the agreed facts her withdrawal of the entire balance was not proper and did not validly terminate Doris Dulak's right in the joint account. While we do not presume that the guardian acted in bad faith (*Morse* v. *Trentini,* 100 N.H. at 158, 121 A.2d at 566), the agreed facts disclose no justification for disturbance of what appears to be the ward's arrangement to dispose of part of his estate by means of the joint account.

*Remanded.*

All concurred.