# In re Estate of Mary Jane Holbrook (Virginia MacDonald, Appellant)

[420 A.2d 110]

No. 447-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

September 8, 1980

598

*Marguerite R. Shreve* and *Harry A. Black* of *Black & Plante, Inc.*, White River Junction, for Appellant.

*Swainbank, Morrissette, Neylon & Hickey*, St. Johnsbury, for Defendant.

Larrow, J. Mary Jane Holbrook, a resident of Lemington, Vermont, died testate on December 9, 1976. Her will, unrevoked at her death, was executed in 1971. Apart from minor bequests not here involved, she divided her property between her two daughters, Virginia MacDonald, appellant here, and Jeannette Ellingwood. Mrs. Ellingwood and her husband, the named executor, had lived with the testatrix on her home farm, and Mrs. Ellingwood was willed all real estate, with a contingent bequest to her husband should the daughter predecease her mother. Mrs. MacDonald was willed "all of my money, including all bank deposits," with a bequest over in the event she should predecease the testatrix. Both daughters survived their mother.

At various times after executing her will, the testatrix purchased two certificates of deposit and opened two savings accounts, all in New Hampshire banks. These were purchased from proceeds of accounts in her sole name. Each was in the names of "Mrs. Mary Jane Holbrook or Jeannette Ellingwood or Virginia MacDonald, payable to either or survivor." At her death, they totalled $45,165.33. The two daughters thereafter withdrew all this money and divided it equally.

With these withdrawals, little cash remained in the estate (slightly over $700), so each sister advanced to the estate $1500 to meet expenses being incurred and to pay claims. Mrs. Ellingwood later advanced, for similar purposes and for estate tax payments, additional sums totalling $11,955.69. None of these sums were repaid. In the final account there remained only $305.27 cash for distribution, apart from $600 in specific legacies to grandchildren. Some personal property, including furniture and a ring disposed of by the will, also remained for decree. Federal and state estate taxes paid totalled $6,990.25.

The instant appeal follows the decree of distribution, an attempted interlocutory appeal having been dismissed for lack of final judgment. *In re Estate of Holbrook*, 136 Vt. 646, 399 A.2d 179 (1979) (*mem.*). By it, the appellant challenges denial of her petition to have the bank accounts and certificates of deposit included in the assets of the estate. She also appeals the allowance of expenses incurred by the administrator in connection with the real estate (taxes, insurance, repairs, and similar items) and failure to repay her $1500 advanced and to apportion expenses of administration.

██ Appellant makes two contentions with respect to the joint accounts and certificates of deposit. She claims that the matter is governed by the law of Vermont, which requires a showing of donative intent, absent here because the pertinent instruments were retained by her mother, with withdrawals prior to her death being made only for her own purposes. Appellee contends here, as below, that the law of New Hampshire governs the nature of the accounts and certificates, under which law they became the property of the two sisters upon the death of their mother. We agree with appellee's contention, and note that even under Vermont law, the same result

would follow. See *Tucker* v. *Merchants Bank*, 135 Vt. 597, 599–600, 382 A.2d 212, 213–14 (1977) (conclusive presumption of gift created by 8 V.S.A. § 909).

Appellant's argument for the applicability of Vermont law is tenuous indeed. She cites merely the general language of *In re Callahan's Estate*, 115 Vt. 128, 52 A.2d 880 (1947), to the effect that legal title to a decedent's personal property passes to his executor. This is, of course, generally true, but it ignores the real point in issue. The first decision to be made is whether the accounts and deposits *were*, upon the death of the testatrix, her personal property. The language referred to is applicable only if, under the law of New Hampshire, title stayed in the decedent rather than passing to the other parties named. Appellant cites no other relevant authority for her contention that Vermont law governs this point, and the cases are clearly against her. The status of the New Hampshire accounts is governed by the law of that state. *Bradley* v. *Bentley*, 85 Vt. 412, 82 A. 669 (1912); *Barstow* v. *Tetlow*, 115 Me. 96, 98, 97 A. 829, 830 (1916). See generally Annot., 25 A.L.R.2d. 1240 (1952) and 10 Am. Jur. 2d *Banks* § 376.

 The New Hampshire law, of which we may take judicial notice even in probate court, where V.R.C.P. 44.1 does not apply, *In re Estate of Holden*, 110 Vt. 60, 66, 1 A.2d 721, 723 (1938) (relying on what is now 12 V.S.A. § 1699); cf. *In re Everett's Estate*, 112 Vt. 252, 23 A.2d 202 (1941), seems quite clear. Its statute, N.H. Rev. Stat. Ann. § 384:28, is, if anything, even more conclusive than our own 8 V.S.A. § 909. It provides that bank accounts such as these shall "become the property of and be paid in accordance with [their] terms to the survivor[s]." This is the statutory result regardless of the source of the funds, intent to vest a present interest, right to withdraw during lifetime, or delivery. The statute puts at rest the uncertain results attendant on litigation based on the theory of gifts, and specifically allows a donee to take any balance remaining in the account by precluding any investigation of the donor's intent after the donor's death. *In re Wszolek Estate*, 112 N.H. 310, 295 A.2d 444 (1972).

 Because the applicable law here is that of New Hampshire, which directly refutes appellant's contention that the accounts and certificates in question should be assets of the pro-

bate estate, her claim of error because of their exclusion from inventory and resultant administration cannot be sustained.

Appellant's second claim of error is difficult to analyze as briefed. But it seems to seek return of her $1500 advance to the executor, and to have expenses connected with the real estate disallowed, because under our cases title thereto vested in her sister as devisee, subject only to the estate's lien for debts, expenses and the like. *In re Callahan's Estate, supra.*

■ Because the amount which appellant withdrew from the joint accounts and certificates of deposit was a substantial part of the basis for the estate taxes involved, the probate court found that her proportionate share of those taxes was in excess of $1500. That finding is not challenged here. But it is not dispositive of the issue. The testatrix' will provided for estate taxes by directing that each daughter pay "that portion of the taxes which are chargeable to the bequest received by each of them." What we have held above with respect to the moneys taken from the joint accounts and certificates clearly establishes that those funds were not received by bequest, or as part of the probate estate. Removing these potential assets from the estate, and from operation of the decree, reduces appellant's taking under the decree to personal property valued at some $1246. Her proportionate share of the estate taxes would, therefore, be substantially less than the $1500 which she advanced, and she should be entitled to a return less the computed proportion of the estate taxes for which she was liable under the will. This liability may well be zero. (See discussion as to return of advances, *infra.*)

We are aware that the foregoing result seems inconsistent with the provisions of 32 V.S.A. § 7301 (a part of the Uniform Estate Tax Apportionment Act). That section would include in "estate" the gross estate of a decedent as determined for purposes of federal and state estate taxes. 32 V.S.A. § 7302 would also apportion the tax among persons interested in the estate, while § 7301(3) defines an interested person as one who receives property from *or by reason of the death of* a decedent. But § 7302 is qualified by the proviso "[u]nless the will otherwise provides." We construe the will here as otherwise providing, since it dictates apportionment based upon the "bequest" received. We must assume that the testatrix, with legal advice, knew the meaning of the words she employed.

The necessity of returning this advance makes vacating the whole decree necessary as a matter of substantial justice. What we have said with respect to the advance by Mrs. MacDonald applies with equal force to the advance by Mrs. Ellingwood. The net effect, because of the almost nonexistent cash position of the estate, will probably be to wipe out the specific bequests of money and personal property, and to burden the real estate, devised to Mrs. Ellingwood, with additional charges. As with Mrs. MacDonald, the moneys received by her from the joint accounts and certificates of deposit are not the result of any bequest; a substantial portion of the estate taxes must be chargeable to the estate itself rather than to the distributive shares of the two devisees and legatees. We are unable at the appellate level to make the revisory computations necessary to bring about the required result, and a remand for this purpose is necessary. For Mrs. Ellingwood, return of her advance and additional charges on her real estate will largely offset each other.

■ With respect to the claim for disallowance of real estate care and maintenance expense, we see no error in the account as allowed. Whatever the law with respect to the vesting of title, possession and maintenance of the property by the executor for purposes of administration are contemplated by our statutes. 14 V.S.A. §§ 929 and 1065. There is no suggestion here that any of the claimed expenses, *i.e.*, taxes, insurance, repairs and the like, were inappropriate or improper. And the executor fully accounted for income from the property during the period of administration. Further, the disallowance of these items of expense, even if justified, would only serve to place an additional charge upon the real estate. It would in no way increase the amount of residue in the estate, half of which each sister is entitled to as residuary legatee, because there would still be a complete absence of personal property sufficient to meet administration expense, estate taxes and probate fees, much less to pay specific or residuary legacies. No harm to the appellant has resulted from the allowance of these items, even were the allowance error. Reversal on this point is not required. *Hogel* v. *Hogel*, 136 Vt. 195, 198, 388 A.2d 369, 370 (1978).

*The order of November 7, 1979, allowing the executor's account, and the decree of distribution of the same date, are vacated. The cause is remanded for further proceedings consistent with the views expressed herein.*