297 P.2d 333

E. L. LUSK and Nettie V. Amonett, Executors of the Estate of Mollie Lusk, Deceased, Plaintiffs-Appellants,

v.

Beth DAUGHERTY, Defendant-Appellee.

No. 6033.

Supreme Court of New Mexico.

May 9, 1956.

Frazier & Cusack, Roswell, for appellants.

Atwood & Malone, Roswell, for appellee.

SADLER, Justice.

The plaintiffs as appellants in this Court have appealed from a judgment rendered against them by the district court of Chaves County in an action involving two causes of action, one in replevin and the other in conversion, involving the ownership of a diamond ring alleged to be of the value of $750.

The present plaintiffs are the son and daughter, respectively, of the late Mollie Lusk of Chaves County, New Mexico. Prior to the latter's death the present action was begun in her name by one or the other, or both, of her children who, as executors of her will were substituted as plaintiffs, pendente lite. Due to mental infirmities, decedent died without knowing the suit was contemplated, or filed.

Mollie Lusk, a former resident of Roswell, New Mexico, was the aunt of defendant. During the latter's childhood, she spent a large part of her time in the home of her aunt and the relationship between them was very close. The decedent died October 20, 1954, while a patient at Woodcroft Sanitarium in Pueblo, Colorado, where she had been confined by reason of mental incapacity resulting from advanced age, from April 28, 1951, until the time of her death. During her lifetime she was the owner of a solitaire diamond ring which is the subject matter of the present action. The ring mentioned at the present time has a reasonable market value of $650.

During the lifetime of Mollie Lusk, she and her husband, Charles Lusk, who predeceased her, expressed to the parents of

defendant the desire that the ring referred to should become the latter's property and stated their intention of making a gift of it to her when Mrs. Lusk, her aunt, no longer wished to wear the ring. In conformity with this desire on the part of Mrs. Lusk, and on or about February 23, 1950, she voluntarily made a gift of the diamond ring, the subject of this action, to the defendant. The latter, a short time previously, had suffered a tragedy in the death of a member of her immediate family and sympathy for her on the part of the aunt, no doubt, influenced the timeliness of the gift.

The gift so made was not the result of any importuning or request by defendant. Indeed, both at the time of the gift and on the following day, she sought to return the ring to her aunt, suggesting that she might wish to give the ring to her daughter, or granddaughter. On each occasion, Mrs. Lusk refused to accept a return of the ring, expressing the wish that it remain the property of defendant.

At the time the said Mollie Lusk made a gift of the diamond ring to her niece, as aforesaid, the donor while of an advanced age was, nevertheless, in possession of her mental faculties and had full knowledge and understanding of the effect of the gift she was making, nor did she at any time thereafter, prior to the loss of her faculties, express any desire or intention inconsistent with the gift of the ring so made to the defendant. The gift was entirely voluntary on the part of Mollie Lusk. The defendant neither requested of her aunt that she make a gift of the ring to her nor did she exercise influence of any kind over her aunt in connection with the gift of the ring.

Subsequent to her confinement in Woodcroft Sanitarium, Mrs. Lusk signed written directions and statements in connection with the ring and as well respecting her intention and desire with reference to it. However, at no time during her confinement at Woodcroft Sanitarium was her mental condition such that she knew or understood the effect of the directions and statements so written.

Having found the facts as hereinabove recited at the conclusion of the trial of this action, the court concluded as a matter of law that title to the diamond ring passed to the defendant when possession thereof was delivered to the defendant by her aunt, Mollie Lusk, with the intention to make a gift of it to her niece, the defendant. The court, likewise, concluded that the gift so made was in all respects valid and binding upon the donor, Mollie Lusk, and upon the plaintiffs as her successors in interest.

The court further concluded that the evidence of conversations between Mrs. Lusk and the parents of defendant, and conversations with Mr. Lusk in the presence of Mrs. Lusk, and with Mrs. Lusk herself, expressing a joint desire that defendant should be the ultimate owner of the ring in question, taken together, satisfy the re-

quirements of the "Dead Man's Statute" and meet the burden of proof resting upon defendant in view of the death of Mollie Lusk.

The court concluded, conformably to its finding on the subject, that the written directions and statements signed by Mollie Lusk while a patient at Woodcroft Sanitarium were void and of no effect by reason of her mental incapacity at the time they were signed. The court held, nevertheless that, under other evidence in the case, the defendant is established as the owner of the diamond ring in question and as such entitled to judgment against the plaintiffs on both causes of action stated in their complaint and to recover her costs.

While counsel for the plaintiffs divide their argument into several points, actually all resolve themselves into two main contentions which we shall treat separately and in the order in which they are presented to us by counsel. First, they contend the elements of a valid gift do not appear in what transpired between the decedent and the defendant, her niece. Counsel for the defendant, citing 38 C.J.S. Gifts, § 10, p. 786, lists the elements of a valid gift as follows:

1. Property subject to gift.

2. A donor competent to make the gift.

3. A donation intent on the part of the donor, not induced by force or fraud.

4. Delivery to the donee.

5. Acceptance by a competent donee.

6. A present gift fully executed.

We think these requisites are fully recognized by the decisions of this Court in Ross v. Berry, 17 N.M. 48, 124 P. 342, and Medler v. Henry, 44 N.M. 275, 101 P.2d 398. See, also, on sufficiency of evidence in cases of this kind, Menger v. Otero County State Bank, 44 N.M. 82, 98 P.2d 834; Medler v. Henry, supra, and Brown v. Cobb, 53 N.M. 169, 204 P.2d 264. Furthermore, the trial court in this case fairly found, either that, or the parties assumed, the presence of all these requisites in the case at bar and there is no real dispute as to the correctness of its findings in this behalf, save in one particular. This one particular is with respect to the mental capacity of the donor at the time of the alleged gift. Accordingly, it has become our duty to examine the record with utmost care to ascertain whether the plaintiff has produced evidence meeting the test where the donor is deceased and mental capacity to make the gift is challenged.

Naturally, counsel for plaintiffs invoke the provisions of 1953 Comp. § 20–2–5, reading:

"In a suit by or against the heirs, executors, administrators or assigns of a deceased person, an opposite or interested party to the suit shall not obtain a verdict, judgment or decision therein, on his own evidence, in respect of any matter occurring be-

fore the death of the deceased person, unless such evidence is corroborated by some other material evidence."

We look to decisions under this statute to ascertain when evidence is deemed to meet its requirements. In the early territorial case of Gildersleeve v. Atkinson, 6 N.M. 250, 27 P. 477, 480, the court gives us a definition of corroborative evidence as contemplated by this statute, as follows:

"* * * Keeping in mind the requirements of the statute above cited, that the evidence must be 'some other material evidence,' the rule fairly deducible from the adjudged cases may be thus announced: Corroborating evidence is such evidence as tends, in some degree, of its own strength and independently, to support some essential allegation or issue raised by the pleadings testified to by the witness whose evidence is sought to be corroborated, which allegation or issue, if unsupported, would be fatal to the case; and such corroborating evidence must of itself, without the aid of any other evidence, exhibit its corroborative character by pointing with reasonable certainty to the allegation or issue which it supports. And such evidence will not be material unless the evidence sought to be corroborated itself supports the allegation or point in issue."

Later cases, both in territorial days and since statehood, have adhered pretty close-ly to the definition pronounced for the court by Justice Seeds in Gildersleeve v. Atkinson, supra. Byerts v. Robinson, 9 N.M. 427, 54 P. 932; Childers v. Hubbell, 15 N.M. 450, 110 P. 1051; Paulos v Janetakos, 41 N.M. 534, 72 P.2d 1.

It thus becomes our duty to determine whether under the evidence here we find that corroboration of the testimony of defendant concerning the making of the gift by the decedent, her aunt, required by the governing statute quoted, supra. As a background to the vital testimony of defendant touching the gift, it may be stated that a genuine affection between the aunt and this particular niece existed. The father of defendant, A. B. Miller, was a half brother of Mollie Lusk, defendant's aunt.

The defendant, Beth Daugherty, was a widow with 7 children, residing on a ranch a few miles out of Roswell. For some time she had been employed at J. C. Penney Company in Roswell, to supplement her income from the ranch for the support of herself and children, driving back and forth each day from the ranch to Roswell.

On February 23, 1950, while at her ranch home following employment for that day at J. C. Penney Company in Roswell, the defendant received a call by telephone from Mrs. Grady, a tenant in the home of Mrs. Lusk, requesting that she drop by the aunt's home on the way to work the following morning. But we shall let the defendant state in her own words what

transpired when she arrived there. She was asked questions and gave answers, as follows:

"Q. State everything that was said that morning when you saw Mrs. Lusk? A. Mrs. Grady called me and asked me to come by as I started to work, and when I went in Aunt Mollie had a cold and was not feeling very well and I went in the bed room and sat on the side of the bed and she said, 'Betty, my hands are getting so small I am afraid of losing my ring, and Papa and I always said we would want you to have the ring, and I want you to have it now', and she took it off her finger and gave it to me. I said, 'do you not think you should give the ring to Nettie and Jean', and she said 'no, Betty, I have given Nettie a ring and Papa gave Jean his diamond so we want you to have this ring.' She said, 'do not give it to anybody, it is yours.'

"Q. Was there anything else said that you recall in that conversation? A. Nothing more.

"Q. When did you next talk to her about the ring? A. The next morning I went back and I said 'Aunt Mollie, I still wonder if you would not like to give the ring to Nettie and Jean', and she said 'no, it is yours and you keep it.'

"Q. Did she ever ask you to give the ring back to her or say it was not your ring? A. Never."

The foregoing incident took place some fourteen months before her aunt, Mrs. Lusk, was taken to the sanitarium in Pueblo. The testimony of Mrs. Daugherty, the defendant, touching the gift of the ring to her must rely for corroboration on what was said by her mother and father touching a conversation with Mrs. Lusk and her husband, Mr. Lusk, prior to his death in 1947. The conversation took place in Mrs. Lusk's home where Mr. and Mrs. Miller had gone to take Mr. Lusk, who was ill, a lemon pie. Testimony was given touching the conversation by Mrs. Miller, as follows:

"Q. State to the best of your recollection what was said on that occasion? A. Mr. Lusk was talking and said to Jean 'show Aunt Annie your ring I gave you', and she came over and showed it to me; she was fixing to leave and she left immediately after showing it to me, and then Mr. Lusk said 'Jean has been very upset over little Eds death and I gave her this ring thinking it would help her in her trouble.' He said 'now, I have given Nettie a ring and I have given Jean a ring', and he said 'now, Mollie and I want Beth to have the other one', and Mrs. Lusk immediately said 'yes, we want Beth to have that ring; you

know Anna, we love Beth about as much as we do Nettie and Jean.'

"Q. That conversation took place in the home after the death of the grandchild? A. Yes, sir, shortly after the death of little Ed."

Mr. Miller, who was a half brother of Mrs. Lusk, did not recall details of the conversation to the same extent as did his wife, Mrs. Miller, but he did make it clear that on this occasion Mrs. Lusk announced it as her intention to make a gift of the ring to the defendant. Among other things, he testified:

"Q. What did Mrs. Lusk say about it? A. She had not at that time given her the ring but said she was going to give it. The first information I had of it she said she was going to give that ring to my daughter.

"Q. She told you she was going to give that ring to your daughter? A. Yes, sir."

■ The prime consideration to be resolved, before determining the question of adequate statutory corroboration, is whether the donor, Mrs. Lusk, knew what she was doing and its effect, when she made a gift of the diamond ring to her niece, Beth Daugherty. In other words, did she understand the nature and effect of her act? The trial court, as reflected by its findings, felt that she did. We see no justification to overturn its findings on the subject. The mere fact that a donor is of advanced age and suffering from the normal deterioration of advancing age does not, standing alone, render such donor incompetent to make a valid gift. As said in Goldman v. Goldman, 116 Cal.App.2d 227, 253 P.2d 474, 478:

"Even though a donor suffers physical and mental debility, he is not thereby necessarily rendered incompetent to make a gift of his property so long as he has sufficient mental power to grasp and comprehend the nature of his act, the character of his property and his relation to the natural objects of his bounty."

See, also, Webb v. Saunders, 79 Cal.App.2d 863, 181 P.2d 43; Pfingst v. Goetting, 96 Cal.App.2d 293, 215 P.2d 93; Gibbs v. Barksdale, 199 Okl. 141, 184 P.2d 755, 2 A.L.R.2d 345; Fuller v. Fuller, 372 Pa. 239, 93 A.2d 462.

In a closely related question, the competency of a testator to make a valid will, we ourselves spoke along the same line as do some of the courts in cases cited. See Calloway v. Miller, 58 N.M. 124, 266 P.2d 365, 368. We there said:

"All of the testimony reflects a perfectly natural deterioration of decedent in his later years. However, the growing picture of physical weakness, mental weakness, loss of some memory

and some power of decision fits the picture known to everyone of the gradual ravages of age."

■ Under the evidence in this case in the light of the decisions cited above, including one of our own, we are compelled to hold the trial court's finding of mental capacity in the donor at time of the gift, sufficient to make it, is supported by substantial evidence.

■ This leaves for decision only the question whether the testimony tendered as corroboration meets the statutory test of sufficiency. That issue, too, must be resolved in favor of the defendant. There can be no doubt but that under our decisions, as well as the decisions of other states, the testimony of Mr. and Mrs. A. B. Miller, parents of the defendant, if accepted by the court, was of a character, "standing alone and unsupported by the evidence of the claimant," their daughter, as did "*tend* to prove the essential allegation or issue raised by the pleadings." (Emphasis supplied.) National Rubber Supply Co. v. Oleson & Exter, 20 N.M. 624, 151 P. 694, 696.

■ See, also, Paulos v. Janetakos, supra, where under testimony somewhat similar to that here relied upon for corroboration, we held it met the requirement of establishing a prima facie case. Certainly, statements antedating the gift are relevant and material to prove an intention to give, even though they take place prior to execution of the gift by a substantial period of time. Culpepper v. Culpepper, 18 Ga.App. 182, 89 S.E. 161; Meriden Sav. Bank v. Wellington, 64 Conn. 553, 30 A. 774.

■ Thus it is that both as to mental capacity of donor to make the gift and sufficiency of the evidence to support a finding that she did so, the trial court's rulings must stand. It follows from what has been said that the judgment of the trial court is correct and should be affirmed.

It will be so ordered.

COMPTON, C. J., and LUJAN, McGHEE and KIKER, JJ., concur.