373 P.2d 820

**Robert ESPINOSA, Plaintiff-Appellant,**

**v.**

**Gust PETRITIS and Robert Espinosa, as Executors of the Last Will and Testament of Mike Lelekos, Deceased, Defendants-Appellees.**

**No. 6937.**

Supreme Court of New Mexico.

July 30, 1962.

V. A. Doggett, Raton, for appellant.

Wright & Kastler, Raton, for appellees.

CARMODY, Justice.

The trial court refused to award ownership of a claimed joint account to the plaintiff, and he appeals.

The question involved is whether, under the facts of this particular case, a joint tenancy in a bank account with right of survivorship was established.

The plaintiff and one Mike Lelekos, deceased, were equal partners in the ownership and operation of the De Luxe Cafe in Raton, New Mexico. On April 24, 1953, Lelekos went to the International State Bank in Raton and opened a savings account by depositing the sum of $7,000.00 therein. According to the bank records, the account was opened in the name of Mike Lelekos or Robert Espinosa, who is the plaintiff-appellant here. However, the trial court found that the suggestion of adding the other name to the account was made to the deceased by an officer of the bank after the first deposit slip had been made out, and, following some discussion, the words "or Robt. Espinosa" were added to the deposit slip by the officer. The passbook for the account was at all times in the possession of Lelekos and, on the face of the passbook, both the names of Lelekos and the plaintiff appeared, as they did on the bank ledger sheet, this data having been recorded from the original deposit slip. The signature card authorizing withdrawals was signed only by Lelekos, although it had blank spaces providing for the signatures of joint owners. Lelekos signed only the side of the card that gave the bank authority to recognize his signature, the other side of the card was unexecuted and at no place on the card did the plaintiff's name appear. During the ensuing five years, the total of

eleven deposits was made to this account by Lelekos. The plaintiff made no deposits and no withdrawals. On February 26, 1958, Lelekos died, and the account at that time contained, excluding interest, $27,659.46. This amount, at least prior to its deposit into the account, was the sole and separate property of Lelekos. Plaintiff, in this action against the executors of the Lelekos estate, sought to establish in himself, on the survivorship theory of joint tenancy, the ownership of the account. The trial court found that Lelekos had not established the account for the benefit of anyone except himself, and that there was no intention on his part to make a gift of the account to the plaintiff, and that no such gift was made.

Plaintiff's appeal is based substantially on the following points: (1) That certain findings of fact are either not supported by substantial evidence, are erroneous conclusions of law, or are immaterial; (2) that courts tend to take a liberal view of joint accounts in order to give effect to the intentions of the parties; (3) that § 48–10–3, N.M.S.A. 1953, raises a presumption that it was the decedent's intention to create a joint account with the right of survivorship; and (4) that Lelekos did intend, and manifested such intention, to make a gift of the joint account with right of survivorship.

These points are all interrelated, and it is not deemed necessary to discuss them separately, inasmuch as an application of the general law on the subject will dispose of the appeal.

Various courts have upheld the validity of joint accounts as a vehicle for transferring title, on the theories of gift, contract or trust. See, Menger v. Otero County State Bank, 1940, 44 N.M. 82, 98 P.2d 834, and the cases cited therein. In the instant case, there is no argument but that the only theory involved would be that of gift, and we therefore do not consider the other theories above mentioned.

In Lusk v. Daugherty, 1956, 61 N.M. 196, 297 P.2d 333, we listed the elements of a valid gift, as follows:

"1. Property subject to gift.

"2. A donor competent to make the gift.

"3. A donation intent on the part of the donor, not induced by force or fraud.

"4. Delivery to the donee.

"5. Acceptance by a competent donee.

"6. A present gift fully executed.

"We think these requisites are fully recognized by the decisions of this Court in Ross v. Berry, 17 N.M. 48, 124 P. 342, and Medler v. Henry, 44 N.M. 275, 101 P.2d 398."

In the Menger case, supra, we recognized that an otherwise valid inter-vivos gift was not defeated by the fact that a depositor in a joint account retained the right to draw on such account. The requirement of delivery in making a valid gift inter-vivos is fulfilled when the donor gives the donee an equal power to withdraw from the account. See, Browne v. Sieg, 1951, 55 N.M. 447, 234 P.2d 1045; Packard v. Foster, 1948, 95 N.H. 47, 56 A.2d 925; Drain v. Brookline Sav. Bank, 1951, 327 Mass. 435, 99 N.E.2d 160; Balfour's Estate v. Seitz, 1958, 392 Pa. 300, 140 A.2d 441; and In re Berzel's Estate (N.D.1960), 101 N.W.2d 557.

In Menger, supra, we stated:

"As was well reasoned in the case of Burns v. Nolette, supra, [83 N.H. 489, 144 A. 848, 67 A.L.R. 1051] the unlimited right of one of the parties to draw upon the account was always present until defeated by the death of the other party; and, the retention of a right to draw upon the account during his lifetime did not defeat the gift, because the donee's right vested at once and was not increased upon the donor's death; that the effect of his death was simply to remove the power of the donor to defeat the donee's right by himself withdrawing the deposit."

It is quite apparent that only the donor can create any right in the donee; and if the donor does not do so, there can be no valid inter-vivos gift. This is true, without regard to the intent of the donor, since mere intention, without effectuating it by delivery, creates no right in the donee or power to withdraw from the fund. The fact that joint accounts have come into common usage is no reason for relaxing the requirement of a valid delivery of a gift.

Thus, the problem in the instant case is whether or not the decedent created, by his actions, a coextensive power of withdrawal in the plaintiff. The trial court refused to so find, and we agree. By its findings, the court determined that the bank would not honor any withdrawals during the lifetime of Lelekos, without the production of a passbook and a duly authorized signature. We, of course, recognize that a surrender of a passbook to the donee is not a prerequisite to the creation of a valid inter-vivos gift, but there must be something by which the donor creates in the donee an equal right to possession of the book. See, Commerce Trust Co. v. Watts, 1950, 360 Mo. 971, 231 S.W.2d 817; Isherwood v. Springs-First Nat. Bank, 1950, 365 Pa. 225, 74 A.2d 89; Nashua Trust Co. v. Heghene Mosgovian, 1951, 97 N.H. 17, 79 A.2d 636; In re Fell's Estate, 1952, 369 Pa. 597, 87 A.2d 310; Balfour's Estate v. Seitz, supra; and In re Berzel's Estate, supra. We do not believe any such right was created by Lelekos in this case. The trial court found that the passbook was re-

tained by the deceased, that there was no actual, constructive or symbolical delivery of any indicia of title and no contract with plaintiff or the bank by which the deceased divested himself of exclusive control of the account.

Plaintiff argues that Burns v. Nolette, 1929, 83 N.H. 489, 144 A. 848, 67 A.L.R. 1051, which was relied upon in the Menger case, supra, supports his contention "that the manner of depositing the money in the Bank with the intention of making a gift or establishing a joint account with the right of survivorship is a divesting of the exclusive dominion of the control of the account." We fail to see that either the case cited or the later New Hampshire cases support such an interpretation. See, Packard v. Foster, supra; Nashua Trust Co. v. Heghene Mosgovian, supra. In Burns v. Nolette, supra, the court stated:

"The question is whether, admitting another to an equal control, but without retaining a right in the donor to the funds withdrawn by the donee, is such a divesting of the donor's control as satisfies the test before stated. It seems to us that it is. The donee's present right is complete. He can draw from the account so long as funds remain. That right is what was given to him." (144 A. at page 850.)

It is quite evident from a study of the above case that, under the rules and prac-

tices of the bank involved, the donee had a present, vested right to withdraw funds. As to this, the court stated:

"But for what it was worth it was a completed gift. *No further act of the donor was required. No act of hers could defeat the right,* although she might render it of no value." (Emphasis added.)

█ We are of the opinion that the findings of the trial court are supported by substantial, although conflicting, evidence. From them, it appears that at no time was the plaintiff vested with any right in the account in question, and he certainly had no equal or coextensive right of withdrawal or control. Under the findings made, the case comes directly within the rule set forth in 48 A.L.R. 189, at 191, II(b), where it is said:

"* * * The rule sustained by a majority of cases is that the mere fact that money is deposited to the account of the owner 'and' another, or the owner 'or' another, does not show an intent to make a gift * * *."

See, also, supplemental notes supporting the above rule in 66 A.L.R. 881; 103 A.L.R. 1123; 135 A.L.R. 1003; and 149 A.L.R. 879.

Argument is made that § 48–10–3, N.M. S.A. 1953, raises a presumption that Lelekos intended to make a gift in joint tenancy. This section reads as follows:

"When a deposit has been made or shall hereafter be made, in any bank transacting business in this state in the names of two [2] persons, payable to either, or payable to either or the survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to either of said persons, whether the other be living or not; and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made."

■ The statute obviously was enacted for the benefit of and to protect banks, and cannot be construed as creating a joint account without the necessary requisites of a gift. See, In re Berzel's Estate (N.D. 1960), 101 N.W.2d 557.

■ Plaintiff argues that various items of evidence should be considered as proof of an intention to make a gift, and cites cases supporting this contention. We have no quarrel with the authorities cited, but, unfortunately for the plaintiff, the trial court, after considering all of the evidence, found that a gift was not intended. This court will not substitute its judgment for that of the trial court on factual questions, where the evidence is in conflict and the trial court has resolved the issue. See, Menger v. Otero County State Bank, supra; Pentecost v. Hudson, 1953, 57 N.M. 7, 252 P.2d 511; Zengerle v. Commonwealth Insurance Co. of N. Y., 1958, 63 N.M. 454, 321 P.2d 636; and Fitzgerald v. Fitzgerald, 1962, 70 N.M. 11, 369 P.2d 398.

From what has been said, we do not believe it is necessary to specifically dispose of each of plaintiff's other claims of error; we find them without merit.

We are of the opinion that the action of the trial court was without error, and should be affirmed. It is so Ordered.

CHAVEZ and MOISE, JJ., concur.

COMPTON, C. J., and NOBLE, J., not participating.