390 P.2d 665

**Martha BROWN and husband, Floyd F. Brown, Plaintiffs-Appellants,**

**v.**

**Virginia Lee DOUGHERTY and husband, David Dougherty, Defendants-Appellees.**

**No. 7330.**

Supreme Court of New Mexico.

March 23, 1964.

Hart & Brockman, Tucumcari, for appellants.

Rowley, Breen & Bowen, Tucumcari, for appellees.

CARMODY, Justice.

A controversy arose between two sisters regarding the ownership of funds in four joint bank accounts opened by their deceased mother in the name of the mother and one of the daughters. The trial court having determined a joint tenancy agreement, an appeal was perfected by the contesting sister.

Although the husbands of each of the sisters are joined as parties, we will, for simplicity, refer to appellant, Martha

Brown, as Martha, and appellee, Virginia Lee Dougherty, as Virginia.

Summarizing the facts found by the trial court, Martha and Virginia were the only two daughters of Mr. and Mrs. L. D. Lee; the father died in December 1957 and the mother in July of 1959. During the lifetime of the parents, substantial gifts of money and land were given by them to the daughters, but the gifts to Martha exceeded by a considerable sum those made to Virginia; Virginia also advanced substantial amounts to her parents and received no reimbursement; after the death of the father, Virginia continued to make her home with her mother and accompanied her when the mother discussed with the officials of two different banks the effect of depositing certain monies belonging to the mother in the joint accounts with a right of survivorship in Virginia; the mother fully understood the meaning of a joint tenancy agreement and opened four accounts in July of 1958 and June of 1959, two of the accounts being in Tucumcari, New Mexico, and the other two in Hereford, Texas; at the time of the mother's death, the total of the accounts was somewhat over $25,000; the money belonged to the mother, and at the time of the various deposits, both the mother and Virginia signed a joint tenancy agreement, generally to the effect that either could, in their lifetime, withdraw any or all of the funds, and that upon the death of either, the survivor was entitled to all of the remain-

ing proceeds; it was the intention of the mother and Virginia to create a joint tenancy with right of survivorship, by way of gift from the mother to Virginia; there was no fraud, coercion or undue influence with respect to the deposits or the signing of the agreements; it was the intention of the mother that Virginia should be the joint owner of the money and that upon her death Virginia should have any of the remaining sums on deposit; during the lifetime of the mother, it was known to both the mother and Virginia that either of them had the authority to withdraw any sums, and neither one told the other not to withdraw, nor prevented the other from withdrawing, any of the money, and both had access to the passbooks; upon the death of the mother, Virginia became the sole owner of the accounts.

Based upon these findings, the trial court concluded and entered its decree that Virginia was the sole owner of the money remaining on deposit.

Martha does not attack these findings as made, but contends that no joint tenancy was created and that the court erred in refusing to make certain requested findings. These requested findings related to the claimed fact that a part of the money deposited came from the estate of the father and therefore the entire amount did not belong solely to the mother but was partially owned by the mother and Martha and Virginia; that it was the custom in the Lee

family to establish joint accounts with right of survivorship, in order to provide for expenses for last illness, funeral and other administration expenses; that if any gift was intended by the signing of the signature cards, it was not intended to be effective until the death of the mother; and, lastly, that Virginia had wrongfully converted half of the joint accounts.

Martha's contentions, although stated under ten separate points, can actually be considered under three categories: (1) That the evidence does not support a finding of a true joint tenancy; (2) that even if there is a joint tenancy with right of survivorship, Martha is entitled to three-sixteenths of the funds deposited, on the theory that all of the money was an asset of the estate of the father, and that the two sisters were owners of an undivided three-eighths interest therein which their mother had no right to give to Virginia; and (3) that the trial court erred in denying a jury trial upon her amended complaint. We will consider these issues in the order stated.

■■ Martha does not attack the findings as such; instead, she urges that the evidence could not sustain the findings made and, contrariwise, justified her requested findings. Reviewing the evidence in the light most favorable to Virginia, as we must in a case such as this (Pentecost v. Hudson, 1953, 57 N.M. 7, 252 P.2d 511), we believe that the court's finding that a gift was made when the joint accounts were opened is sustained by substantial evidence. The elements of a gift have been discussed by us in various cases; see particularly Lusk v. Daugherty, 1956, 61 N.M. 196, 297 P.2d 333, and Espinosa v. Petritis, 1962, 70 N.M. 327, 373 P.2d 820. Martha urges that certain of these elements are not present in the instant case, specifically that there was no substantial evidence of a donation intent on the part of the mother, no delivery to Virginia, and no present gift fully executed.

With respect to intent, the evidence is plain that the mother opened the joint account, fully understanding the meaning of joint tenancy, and had Virginia sign the necessary cards so that the bank would honor the signature of either of the parties.

■ As to delivery, the fact that the passbooks were kept in the house where Virginia and her mother were living, in such a place that both had free access to them, would seem to satisfy this requirement. This is particularly true when there is nothing in the record to negative the fact that Virginia had as much control over these passbooks as did her mother.

The final element, i. e., a present gift fully executed, is that upon which Martha places her greatest reliance. However, here again the fact the Virginia had equal control of and access to the passbooks was substantial evidence of a gift fully executed.

The record is completely silent of any showing that Virginia could not, if she so desired, have withdrawn all of the money from the accounts at any time after the joint tenancy cards were signed. We are fully cognizant of the fact of the heavy reliance placed by Martha on Virginia's statements on cross-examination that the money in the accounts was not to go to her until her mother's death. Nevertheless, the trial court, as the fact finder, could have just as easily, and apparently did, interpret this statement as merely evidencing an intent on Virginia's part not to use any of the money until after her mother's death. This is far different from stating that Virginia had no right to the money, or that there was no gift until her mother's death. We are satisfied from all of the facts and circumstances that there was substantial evidence fully warranting the trial court's finding of a joint tenancy by gift. Although there is considerable conflicting evidence and testimony which could have been interpreted in different ways to arrive at a contrary result, this is of no consequence here. See Menger v. Otero County State Bank, 1940, 44 N.M. 82, 98 P.2d 834, and Pentecost v. Hudson, supra.

We also take note of § 70–1–14.1, N.M. S.A.1953, which, in substance, provides that an instrument transferring title to personal property to two or more persons as joint tenants shall be prima facie evidence that the property is held in joint tenancy. This section also specifies that a preponderance of the evidence shall be sufficient to establish such tenancy. Considering the statute, and in view of the decided conflict in the evidence, we are unable to say that Martha's proof outweighed that which was deemed preponderant by the trial court in making its findings.

Martha relies on Espinosa v. Petritis, supra, and cases from other jurisdictions involving joint accounts, but both the Espinosa case and the other cases relied upon by her are factually so different that it is deemed unnecessary to distinguish them.

■ With respect to Martha's contention that she is entitled to three-sixteenths of the money in the joint accounts because it is claimed to have been an asset of her father's estate, suffice it to say that the trial court specifically found, and no attack is made upon such finding, that *all* of the money in the accounts belonged to the mother. Martha's attack on these findings, if it could in any sense be so considered, is merely a review of the evidence to the contrary which might have led the trier of the facts to a different conclusion. There was certainly substantial evidence in the record justifying the court's finding. In this connection, we would observe that the evidence of record is sadly deficient as to any showing of what portion, if any, of the funds in the accounts was actually accumulated prior to the death of the father. Martha's argument seems to be that inasmuch

as the mother and father accumulated a substantial estate and the mother managed the property following the father's death, that therefore the funds in issue were all a part of the father's estate, or the increment thereof. Absent proof that the claimed three-sixteenths interest was all an asset of the father's estate, it would have been sheer speculation for the trial court to have found that such portion of the monies was Martha's as distinguished from that of the mother.

We will not disturb the finding made by the trial court and must conclude, as did the trial court, that all of the money, prior to the signing of the joint signature card, belonged to the mother and was hers to do with as she saw fit.

█ Lastly, Martha claims that she should have been awarded a jury trial and that the trial court erred in refusing her demand therefor. This assertion arises because of the filing of an amended complaint. The original complaint was in the nature of a suit for an accounting, which sought recovery for one-half of the amounts in the joint accounts. The demand for jury trial was not timely made as to the original complaint. Subsequently, an amended complaint was filed, in most respects identical with the original, but claiming that Virginia had converted to her own use the entire proceeds of the joint accounts, thereby depriving Martha of one-half thereof. Martha thus claims that she changed the nature of the cause of action and her amended complaint, therefore, does not relate back to the original complaint, The difficulty with such an argument is that the amended complaint actually did not allege any different issues of fact. The complaints were both based upon the same occurrences and transactions, and therefore makes applicable the provisions of rule 15(c) (§ 21–1–1(15) (c), N.M.S.A.1953), which expressly states that an amended pleading relates back when the claims therein asserted arose out of the conduct, transaction or occurrence set forth in the original pleading. Although Martha placed the label of "trover and conversion" in her amended complaint, no new issues were pleaded and the cause of action allegedly arose out of the same conduct, transaction or occurrence set out in the original complaint. See Davis v. Severson, 1963, 71 N.M. 480, 379 P.2d 774; Burdick-Baron Co. v. Swift & Co. (5th Cir. 1950), 180 F.2d 424; Isaacks v. Jeffers (10th Cir. 1944), 144 F.2d 26; Ross v. Philip Morris Company (Mo.D.C.1958), 164 F.Supp. 683; Bowles v. Tankar Gas (Minn.D.C.1946), 5 F.R.D. 230. The trial court did not err in denying the demand for jury trial.

The judgment of the district court is without error and will be affirmed. It is so ordered.

COMPTON, C. J., and CHAVEZ, J., concur.