492 P.2d 636

**Marion Curtiss KINNEY, Plaintiff-Appellee,**

v.

**Curtiss Kinney EWING, Defendant-Appellant.**

No. 9281.

Supreme Court of New Mexico.

Jan. 7, 1972.

**366**

Mitchell, Mitchell & Alley, Santa Fe, for appellant.

Catron, Catron & Donnelly, Santa Fe, for appellee.

## OPINION

STEPHENSON, Justice.

Appellee ("Plaintiff") sought a declaratory judgment regarding the rights of the parties with respect to certain securities ("the Securities") in the names of the parties as joint tenants and to a related bank account. From a judgment declaring plaintiff to be the sole owner of these assets, appellant ("defendant") appeals. We affirm.

In 1944 Charles Milton Kinney died, survived by his wife (plaintiff) and his daughter (defendant). His will left all his property to plaintiff. At the time of Mr. Kinney's death, plaintiff and decedent owned their residence in their joint names.

Plaintiff sold the residence and with the proceeds of the sale made the first purchase of the Securities in December of 1945. Plaintiff, being concerned about the well-being of defendant who was then a minor, consulted a friend and bank officer about what to do with her money from the sale of the residence. He advised her to register the stock certificate for the first purchase of the Securities in the joint names of plaintiff and defendant as joint tenants with right of survivorship so that the shares would go to defendant upon plaintiff's death without probate. She followed his advice.

Thereafter, plaintiff bought and sold various other corporate securities. Some were registered in plaintiff's name alone while others were registered in plaintiff's and defendant's names as joint tenants. Whenever plaintiff sold any of the Securities registered in joint tenancy, she had to obtain defendant's signature on the certificates or on stock powers. On one occasion part of the Securities were pledged by the parties as security for a bank loan for the benefit of defendant's husband. In 1960 plaintiff commenced purchasing the Securities in another mutual fund. Of these, she made numerous separate purchases with her last purchase taking place in December of 1967. All of the stock certificates acquired from these purchases were similarly registered in joint tenancy.

During the 22-year period over which the Securities were purchased, defendant's name changed from her maiden name of Curtiss Kinney to her first married name and then to her present married name. To keep the Securities correctly registered, plaintiff took the necessary steps to reregister the Securities so that the stock certificates for the Securities all ultimately appeared in defendant's present name. Plaintiff's own funds provided the source for the purchase of all the Securities.

Starting in 1946, plaintiff kept the stock certificates for the Securities in a safe deposit box which was rented in the name of plaintiff and defendant. In 1955 a new

rental agreement for the same safe deposit box was signed by both plaintiff and defendant. In spite of equal access to the safe deposit box under the new rental agreement, plaintiff kept the keys to it and was the only one who ever entered it.

Checks for dividends and other distributions on the Securities were always made payable to plaintiff and defendant as joint tenants with right of survivorship. They were mailed to plaintiff and she deposited them in a joint bank account in the names of plaintiff and defendant. The first record of such a joint bank account appears on a signature card in 1950. In 1955 a new joint bank account signature card was signed by plaintiff and defendant which replaced the one of 1950. Both signature cards were signed by both parties and provided that the funds on deposit in the account were owned by the parties as joint tenants and that either party could withdraw all or any part of the account. Plaintiff kept a checkbook for the joint bank account and was the only party who withdrew any funds from it. Plaintiff also paid all income taxes arising from dividends on the Securities.

During 1967 relations between plaintiff and defendant deteriorated. Plaintiff, without the knowledge of defendant, had the joint bank account changed to her name alone and had defendant's name cancelled from the safe deposit box rental agreement. In spite of the name change, plaintiff continued to deposit dividend checks paid on the Securities in the bank account, either without any endorsement at all or by endorsing both her name and defendant's name on the checks.

In 1968 plaintiff attempted to sell some of the Securities without the prior knowledge of defendant. When defendant learned about it through the parties' mutual stockbroker, she refused to sign the necessary stock powers. Several days later, defendant went to the bank and attempted to withdraw all the funds on deposit in the account and was refused by the bank because of its name change. Defendant, through counsel, then demanded partition of the Securities. Plaintiff refused and instituted this action.

With respect to the Securities, the court found the facts to be generally as we have stated them. Most importantly, it also found: (1) that due to plaintiff's exclusive dealings with the Securities, there was no delivery of them from plaintiff to defendant; and (2) that the registration of the Securities by plaintiff in joint tenancy did not manifest any intention on her part to make a present gift to defendant, but only indicated her intention to have the Securities pass to defendant upon plaintiff's death. Consequently, the court concluded that plaintiff had made no completed gift and that the Securities were "owned by plaintiff as her sole property and defendant has no right, title or interest therein or thereto."

As to the funds on deposit in the bank account, the court found the facts also to be generally as we have stated them. Most importantly, it found that plaintiff, because of her exclusive dealings with the account, had no intention of making a present gift to defendant of any funds in the account, but rather intended to retain sole control over the funds until her death, at which time plaintiff intended for defendant to receive any funds remaining in the account. Consequently, the court found that neither had there been a completed gift of these funds nor did defendant have any "right or interest therein or thereto."

The basic question presented is whether a valid gift was made and completed. The elements of a valid gift were stated in Lusk v. Daugherty, 61 N.M. 196, 297 P.2d 333 (1956) and are:

"1. Property subject to gift.

2. A donor competent to make the gift.

3. A donation intent on the part of the donor, not induced by force or fraud.

4. Delivery to the donee.

5. Acceptance by a competent donee.

6. A present gift fully executed."

See also Espinosa v. Petritis, 70 N.M. 327, 373 P.2d 820 (1962).

Defendant first contends that so far as the Securities are concerned, delivery, within the meaning of the fourth element enumerated in Lusk, was completed by plaintiff having caused the Securities to be registered in defendant's name. More specifically, she asserts that if that portion of the court's fourth finding which states that "there has never been a delivery of any of said securities from plaintiff to defendant" refers to a physical transfer of possession of the certificates, then she has no quarrel with it, but if the court meant that the fourth requirement for a valid gift as stated in Lusk had not been met, an erroneous conclusion of law was made in the guise of a finding.

■ We cannot determine with certainty the sense in which the quoted words were meant, but will presume it was the former because the latter would have constituted error. Reasonable presumptions will be indulged to support the correctness of judgments. Bradley v. Hap Crawford, General Contractor, 77 N.M. 738, 427 P.2d 255 (1967). See also Petritsis v. Simpier, 82 N.M. 4, 474 P.2d 490 (1970); and Cave v. Cave, 81 N.M. 797, 474 P.2d 480 (1970).

■ Admittedly, there is a split of authority, consideration of which convinces us that courts have not uniformly distinguished between delivery and donative intent. In our opinion, the better reasoned view is that where a donor purchases corporate stock, or puts his existing corporate stock, in his name and the name of the donee as joint tenants and the certificates therefor are duly issued in such registration, there has been a legal delivery from the donor to the donee of an interest in the corporate stock. Frey v. Wubbena, 26 Ill. 2d 62, 185 N.E.2d 850 (1962); Zander v. Holly, 1 Wis.2d 300, 84 N.W.2d 87 (1957); Allender v. Allender, 199 Md. 541, 87 A.2d 608 (1952); Manning v. United States Nat. Bank of Portland, 174 Or. 118, 148 P.2d 255 (1944); and Eisenhardt v. Lowell, 105 Colo. 417, 98 P.2d 1001 (1940).

The fact that the new joint tenancy certificates are delivered to, and retained by, the donor does not defeat the requirement of delivery since the possession of one cotenant is in contemplation of law the possession of the other. Allender v. Allender, supra. A gift through the creation of a joint tenancy does not require a complete surrender of dominion and control since to do so would be inconsistent with the nature of any estate in joint tenancy. Kuebler v. Kuebler, 131 So.2d 211 at 218 (Fla.Ct.App. 1961).

■ Plaintiff dwells upon facts we have mentioned concerning her continued dominion and control over the certificates. However important such evidentiary matters may be on the subject of the donor's intent, as we shall presently see, in the case of stock certificates, a legal delivery within the meaning of the fourth element for a valid gift as stated in Lusk takes place when stock certificates are registered, at the request of the donor, in the name of the donor and donee as joint tenants.

■ Stock certificates in joint tenancy differ from the type of joint savings accounts which were considered in Espinosa v. Petritis, supra, and Brown v. Dougherty, 74 N.M. 80, 390 P.2d 665 (1964), which turned upon dominion over the passbook without which funds could not be withdrawn. Dominion over a stock certificate registered in joint tenancy is of little consequence on the legal issue of delivery, since acts of ownership over such certificates must be exercised by both parties in any case. Manning v. United States Nat. Bank of Portland, supra.

Such savings accounts as were discussed in Espinosa and Brown (requiring use of a passbook) differ from checking accounts and perhaps even from the type of savings accounts now in wide use in which passbooks are not issued or used.

The decisive question concerning the Securities is whether there existed the requisite donative intent (the third requirement

for a valid gift as stated in Lusk). The trial court found that:

"6. In registering said securities in the names of herself and defendant as joint tenants, plaintiff did not thereby intend to give defendant any interest in said securities during plaintiff's lifetime, but only to provide for the passing of the ownership of said securities to defendant upon the death of plaintiff; plaintiff's intention was to make a gift of said securities to defendant to take effect upon the death of plaintiff, and not before."

■ Defendant relies upon § 70–1–14.1, N.M.S.A., 1953, which effected profound changes in our law in the field of joint tenancies, and which provides:

"An instrument conveying or transferring title to real or personal property to two [2] or more persons as joint tenants, to two [2] or more persons and to the survivors of them and the heirs and assigns of the survivor, or to two [2] or more persons with right of survivorship, shall be prima-facie evidence that such property is held in a joint tenancy and shall be conclusive as to purchasers or encumbrancers for value. In any litigation involving the issue of such tenancy a preponderance of the evidence shall be sufficient to establish the same."

She argues that by virtue of this statute, the certificates for the Securities constituted prima facie evidence that the stocks were held in joint tenancy; that since the certificates were so registered at plaintiff's direction without consideration passing from defendant to plaintiff, they are also prima facie evidence of plaintiff's intent to give defendant a gift of a present interest in the securities; that it was therefore incumbent upon plaintiff to meet this prima facie evidence or rebut these presumptions; and that the registration of stock certificates in joint tenancy at the direction of the donor creates a presumption of donative intent. We have no quarrel with defendant's reasoning to this point, but she then argues that it was incumbent upon plaintiff to rebut this presumption by clear and convincing evidence which, as a matter of law, she failed to do, and it is here that we take our departure from her position.

An examination of § 70–1–14.1, particularly in its use of "prima-facie evidence," "conclusive" and "preponderance of the evidence," clearly demonstrates the purpose of the legislature to deal with evidentiary matters, including the required quantum of proof, with specificity in relation to joint tenancies. Defendant assumes that the last sentence of the statute refers only to the affirmative establishment of a joint tenancy. We do not necessarily agree that such is the case. The words "the same" refer back to "the issue of such tenancy." If joint tenancy is "in issue," its existence is to be resolved, and the negative would seem to be as much included as the affirmative. Moreover, we are of the view that if the legislature had intended the negative to require a greater quantum of proof than the affirmative, it is reasonable to suppose that it would have said so.

Similarly our precedents do not seem to require proof by clear and convincing evidence. The decisions have not indicated that any such quantum of proof is necessary. LeClert v. LeClert, 80 N.M. 235, 453 P.2d 755 (1969); Espinosa v. Petritis, supra; Menger v. Otero County State Bank, 44 N.M. 82, 98 P.2d 834 (1940). One decision, moreover, upheld the finding of a gift by creation of a joint bank account, citing § 70–1–14.1, supra, and stating that it was unable to say that the appellant's proof "outweighed" that of the donee which the trial court had deemed "preponderant." Brown v. Dougherty, supra. We find the cases of Webb v. Richardson, 69 N.M. 15, 363 P.2d 626 (1961) and Butler v. Butler, 80 N.M. 36, 450 P.2d 922 (1969), relied upon by defendant, to be not in point.

■ We have no hesitation in holding that the trial court's finding as to lack of donative intent as to the Securities is sustained by substantial evidence. Plaintiff relied on the advice of a banker friend in selecting the joint tenancy vehicle. Legal

advice 'from bankers, although historically a boon to the legal profession, is attended with hazards to its recipient, albeit likely to no greater degree than financial advice from lawyers. The question posed is not whether the advice was good or bad—accurate or inaccurate. Rather, the issue is what intention the advice engendered as evidenced by plaintiff's subsequent actions and her testimony.

Defendant's next point is:

"EVEN IF THERE IS NO DONATIVE INTENT TO GIVE DEFENDANT A PRESENT INTEREST IN THE SECURITIES, PLAINTIFF ADMITTEDLY INTENDED TO GIVE DEFENDANT A FUTURE INTEREST IN THE SECURITIES AS SHE CAUSED THEM TO BE REGISTERED IN JOINT TENANCY. THUS, BY DECLARING THAT DEFENDANT HAD NO INTEREST WHATSOEVER IN THE SECURITIES, THE DISTRICT COURT ERRED IN FAILING TO CARRY OUT PLAINTIFF'S ADMITTED DONATIVE INTENT."

The difficulty with this argument is that we have just determined that the gift must fail. It is agreed we are concerned with a supposed gift. There being no donative intent (as we have just held), there was no present fully executed gift. Lusk v. Daugherty, supra. There was no "admitted donative intent." Rather, there was an intent that defendant should have nothing during plaintiff's lifetime.

As stated in Brown on Personal Property, § 48 (2d ed.):

"A gift, moreover, is a present passing of the title. * * * If the alleged donee does not receive a present interest in the subject matter, but only one to take effect in the future, the gift is abortive and unenforceable. In addition, if the gift is not to go into effect until the death of the donor it is testamentary in character and void unless executed in accordance with the statutes regulating the making of wills. * * *"

Defendant points to a further statement by Brown in the same section:

"The rule that a gift to take effect in the future is void, is, however, rather easily avoided by the expedient of finding that there was a present gift of the right to the subject matter, with the enjoyment only postponed to a later date. It is held that in chattels, as in land, there may be a present transfer of the title, even though the enjoyment is postponed, provided the right to the future enjoyment is irrevocable. * * *"

Defendant's problem is that the court did not so find.

The true situation is that plaintiff wished to make provision for defendant following the former's death. The means she chose, based upon the advice she received, was inappropriate. She desired to avoid probate proceedings. She is not to be criticized for this. Probate proceedings have not achieved popularity with the laity and are unlikely to do so.

Testamentary intentions are transitory. The lady changed her mind.

The question presented, in its final essence, is whether the court's finding numbered 6, particularly that portion which states that plaintiff did not intend to give defendant "*any* interest in said securities during plaintiff's lifetime" is supported by substantial evidence. We hold that it is.

We finally come to a consideration of the court's ruling regarding the joint bank account. The trial court made findings generally as we have summarized, and in its Finding No. 8 stated:

"In establishing said bank account as a joint account in the names of the parties, plaintiff did not thereby intend to give defendant any interest in the moneys on deposit in said account during plaintiff's lifetime, but on the contrary plaintiff intended to retain sole and complete control over the funds in said account for so long as she should live, and that only the funds remaining in said account at the time of her death, if any, should pass

to defendant at that time, and not before."

The court then concluded that plaintiff was the sole owner of the funds on deposit and defendant had no right or interest therein because there had been no completed gift of any interest in the account.

Defendant's argument is included in one point, but is actually broken down into three separate contentions. Defendant first argues:

REGARDLESS OF THE OWNERSHIP OF THE SECURITIES, DEFENDANT WAS A CO-OWNER OF THE BANK ACCOUNT AND HAD THE RIGHT TO WITHDRAW ALL OF ITS FUNDS.

Her argument proceeds generally along the same lines as that advanced in respect to the Securities, viz: that there was a valid delivery; that plaintiff had the burden of rebutting the presumption of gift and joint tenancy by clear and convincing evidence, and that, as a matter of law, she failed to do so.

■ Plaintiff questions whether § 70–1–14.1, supra, applies to bank accounts. This court has implicitly found it so applicable in Brown v. Dougherty, supra, an opinion of which we approve. We do not believe that any exceptions should be carved out of this statute.

■ While agreeing with defendant that there was a valid delivery within the meaning of the fourth requirement of Lusk, and that in fact such delivery is even more ·clear in respect to the bank account than in regard to the Securities, we are unable to agree that it was a completed gift for the same reasons which we have previously explained.

It is true that defendant had the right to withdraw all funds in the account, but only in a limited sense. As between the parties to this litigation inter se, she had no such right by reason of the trial court's determination, which we are affirming, to the effect that there was no present gift fully executed. As between defendant and the bank, the latter was presumably· entitled to· rely upon the signature cards and defendant did have the right to withdraw all of the funds. The significance of all this is lost upon us, because in point of fact she· never did withdraw the funds or any portion thereof, thereby lending credence to· plaintiff's position that she had no right to do so.

Defendant next states:

PLAINTIFF COULD NOT AFFECT DEFENDANT'S OWNERSHIP· RIGHTS IN THE BANK ACCOUNT BY CHANGING ITS TITLE.

We are inclined to agree with this statement, but it does not affect our ultimate decision. In view of the trial court's findings of fact, which we are approving, that defendant had no interest in the bank account, her rights could not have been prejudiced thereby.

In any case, plaintiff could have also· withdrawn all the funds and deposited them in a new bank account on which only· she was authorized to sign. In relation to· this phase of defendant's arguments, we are inclined to look past the form and seize upon the substance. We therefore find no· merit in this phase of defendant's argument.

Finally, defendant argues:

IN THE ALTERNATIVE, PLAINTIFF COULD NOT LEGALLY DEPOSIT JOINT DIVIDEND CHECKS IN THE BANK ACCOUNT AFTER ITS NAME-CHANGE WITHOUT DEFENDANT'S CONSENT.

■ Plaintiff could "legally" do as she chose with the dividend checks inasmuch as there having been no present gift fully executed of the Securities from which the dividends emanated, they were her property.

Though the bank's actions in accepting checks drawn payable to two payees for a deposit to an account of one of them only without endorsement by the other may seem peculiar, we will speak no more of this, inasmuch as the bank is not present in this litigation to explain or defend.

We hold that the trial court's Finding of Fact No. 8 is supported by substantial evidence.

Finding no error, the judgment of the trial court is affirmed.

It is so ordered.

McMANUS and OMAN, JJ., concur.