**Edward EDSTROM, Appellant,**

**v.**

**Armin KUDER, as Executor of the Estate of Eve Edstrom, Appellee.**

**No. 9278.**

District of Columbia Court of Appeals.

Argued Oct. 14, 1975.

Decided Feb. 3, 1976.

James Brent Clarke, Jr., Washington, D.C., with whom Daniel Webster Coon, Washington, D.C., was on the brief, for appellant.

Michael F. Curtin, Washington, D.C., for appellee.

Before KELLY and MACK, Associate Judges, and BELSON, Associate Judge, Superior Court of the District of Columbia.*

MACK, Associate Judge:

This appeal is from a decision of the Superior Court denying appellant's request for specific performance of a written agreement entered into by appellant Edward Edstrom and his estranged wife Eve Edstrom, now deceased. The wife, whose estate is administered by appellee, as executor, died before transferring title to certain shares of Washington Post Company stock from her name to the joint names of herself and her husband, in accord with the terms of the agreement. After considering the factual background of the contract, the trial court denied the requested relief, finding that Eve Edstrom, having purchased the shares with her own funds and having exercised exclusive control over the stock, had no intention of giving appellant any interest in the property. We affirm.

Edward and Eve Edstrom were married on March 10, 1951. From 1955 until her death in October 1971, Eve Edstrom was employed as a journalist with the Washington Post Company. Edward Edstrom, also a journalist, had a series of jobs and was unemployed for some periods.

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

Throughout the last years of their marriage, Mr. and Mrs. Edstrom experienced marital difficulties and separated several times, the final separation occurring in 1969. Divorce proceedings were commenced by Eve Edstrom in 1970 while she was ill with cancer, but the action never proceeded to final judgment because of her serious illness.

During the divorce proceedings, a dispute arose between the Edstroms concerning ownership of 24 shares of Washington Post Company stock which had been purchased by Eve Edstrom and registered in the joint names of Eve and Edward Edstrom. Only Washington Post employees were permitted to purchase company stock, and an employee was required at all times to remain a co-owner. The Washington Post Company, having learned of the dispute from inquiries by Mr. Edstrom about stock dividends, informed Eve Edstrom that the company would redeem her shares unless the dispute was resolved prior to a planned public offering and stock split.

As a result, a conference involving Mr. and Mrs. Edstrom and their counsel was held on May 20, 1971.[1] When a settlement could not be reached, the parties agreed to execute a contract which would enable Eve Edstrom to participate in the stock split. Under the terms of the written agreement, title to the stock was to be transferred to Mrs. Edstrom. She agreed to transfer the stock back to herself and her husband, as joint tenants with right of survivorship, after the stock split.

Thereafter, the stock was reissued in Mrs. Edstrom's name and then exchanged for 1,440 new shares pursuant to the public offering. A few months later, Eve Edstrom died without transferring title back to herself and appellant. Appellant, seeking to obtain the 1,440 shares of Washington Post Company stock instituted this action for specific performance of the May 20, 1971 contract.

Appellant contends that the trial court erred in looking into the background and the facts giving rise to the agreement. His position is that the agreement was supported by independent consideration and is clear and unambiguous in its terms, and that therefore it is a legally enforceable contract between the parties. We do not agree that the trial court should have enforced the agreement without considering all the circumstances of the case. Specific performance is an equitable remedy which may be granted or refused after an examination of both the contract itself and the surrounding circumstances. See 4 J. Pomeroy, Equity Jurisprudence § 1404 (5th ed. 1941); *Willard v. Tayloe*, 75 U.S. 557, 565–67 (8 Wall.) 19 L.Ed.2d 501 (1869). *See also* 5A A. Corbin, Contracts § 1162 (1964). The trial court properly considered the factual background of the agreement to determine the intention of the parties and their purpose in making the contract.[2]

Both the terms of the agreement and the surrounding circumstances demon-

---

1. On the same day, May 20, 1971, Mrs. Edstrom executed a revocable trust agreement, transferring all of her property and estate to named trustees with directions to distribute the entire corpus to persons other than appellant.

2. *See In re Estate of Mather*, 410 Pa. 361, 189 A.2d 586 (1963), a suit for specific performance of a written stock option agreement, in which the court stated:

In order to determine the meaning of the agreement, we must examine the entire contract since it is well settled that in construing a contract the intention of the par-

ties governs and that intention must be ascertained from the entire instrument taking into consideration the surrounding circumstances, the situation of the parties when the contract was made and the objects they apparently had in view and the nature of the subject matter. (Citations omitted.) [*Id.* at 366–67; 189 A.2d at 589.]

*See also Luther Williams, Jr., Inc. v. Johnson*, D.C.App., 229 A.2d 163, 165 (1967); *Murray v. Gadsden*, 91 U.S.App.D.C. 38, 43–46, 197 F.2d 194, 199–202 (1952).

strate that the contract was not intended to affect the substantive rights of the parties, but instead was executed in order to make possible the exchange with the Post.[3] The purpose of the agreement was to preserve the preexisting rights of the parties—to maintain the status quo until ownership rights in the stock were resolved in the divorce proceeding.[4] Thus, appellant was entitled to the requested relief, transferring the stock to him as sole surviving joint owner, only if he had an interest in the property at the time of the agreement.

When the agreement was executed, the stock was registered in the joint names of Eve Edstrom and Edward Edstrom, as tenants by the entirety with respect to some shares and as joint tenants with right of survivorship with respect to the remaining shares. Appellant argues that even if the factual background of the agreement is relevant, the joint ownership created a tenancy by the entirety which cannot be severed save by joint action of the parties or by a divorce. However, the issue is not whether a tenancy by the entirety was severed, but rather whether a tenancy by the entirety or a joint tenancy with the right of survivorship was ever created.

Under the rule of *Prather v. Hill,* D.C.App., 250 A.2d 690 (1969), and *Murray v. Gadsden,* 91 U.S.App.D.C. 38, 197 F.2d 194 (1952), the establishment of a joint bank account in which one individual deposits all the funds creates an effective joint tenancy with a right of survivorship only if the depositor intended to transfer to the noncontributing joint holder a present interest, as well as a right of survivorship, in the funds.[5] While the decisions in this jurisdiction involve the requirements for establishing a joint tenancy with right of survivorship in bank accounts, other jurisdictions have applied similar requirements in determining ownership of jointly held stock certificates.[6] We agree that a similar approach is appropriate.[7]

Therefore, in order to create a joint tenancy or a tenancy by the entirety in stock purchased solely by one individual but registered in joint names, it is necessary that the purchaser intend to transfer a present interest in the funds. In this case, the trial court found that Eve Edstrom purchased the Post stock with her own funds, exercised exclusive control over the stock, and had no intention of

---

3. The trial court found that the agreement was executed "in order to enable decedent to participate in the stock split . . . ."

4. At the time the agreement was executed, Eve and Edward Edstrom were engaged in divorce negotiations in which Eve Edstrom vigorously asserted that she was the sole owner of the Post stock despite the joint registration. Appellant disagreed, claiming that he had some interest in the stock. The evidence clearly shows that Eve Edstrom did not intend to convey any rights in the stock to appellant by means of the agreement.

5. *Accord, Imirie v. Imirie,* 100 U.S.App.D.C. 371, 246 F.2d 652 (1957); *Thompson v. Thompson,* 100 U.S.App.D.C. 285, 244 F.2d 374 (1957). The rule is predicated on the principle that a gift which is operative only at the donor's death is testamentary in character and must conform with the formal requirements of testamentary disposition.

6. *See, e. g., Sullivan v. American Telephone and Telegraph Co.,* 230 So.2d 18 (Fla.Ct.App. 1970); *Blanchette v. Blanchette,* 362 Mass. 518, 287 N.E.2d 459 (1972); *Kinney v. Ewing,* 83 N.M. 365, 492 P.2d 636 (1972); *Buffaloe v. Barnes,* 226 N.C. 313, 38 S.E.2d 222 (1946).

7. We note at least one exception however. In cases involving joint bank accounts, there is a presumption that the joint account was established only for the convenience of the depositor, and one who claims to be a donee has the burden of establishing an *inter vivos* gift. *Murray v. Gadsden, supra.* Because of the different nature of stock certificates, we are of the opinion that in cases involving stock registered in joint names with a right of survivorship, the burden of proof should be on the one who attacks the joint tenancy. *See Sullivan v. American Telephone and Telegraph Co., supra.* In this case, appellee met its burden of proof by providing ample evidence to support the trial court's findings.

giving Edward Edstrom "any interest or ownership in the stock." These findings are supported by facts showing that Eve Edstrom, as an employee, was authorized to purchase the Post stock, and a loan used to purchase ten of the shares was repaid from payroll deductions deposited in her Washington Post Credit Union account. She received all dividends and retained control of the stock certificates. In addition, the Edstroms owned other property registered in their joint names which was treated differently than the Post stock: proceeds from the sale of jointly registered mutual fund shares, acquired with money out of their joint earnings, were divided equally shortly before Eve Edstrom's death; jointly registered shares in an account with a brokerage firm were purchased with funds solely out of appellant's earnings, and both he and his wife agreed that appellant alone was entitled to the proceeds from the sale of this stock. The Post stock, Eve Edstrom claimed, was purchased by and belonged to her. We are convinced that the trial court's determinations were warranted.

■ Appellant had no interest in the Washington Post Company stock at the time the May 20, 1971 agreement was executed. Accordingly, the decision of the Superior Court denying an award of specific performance is

*Affirmed.*