**Bailey Estate**

BOLGER, J., July 23, 1971.—Elizabeth F. Bailey died on August 31, 1966, intestate, and on September 27, 1966, petitioner, Margaret M. McFarland, was appointed administratrix of decedent's estate.

On June 16, 1967, administratrix filed a petition for citation directed to respondent, Evelyn H. Geschwindt, to show cause why she should not deliver to the administratrix: (a) certain sterling silver flatware and articles of household furniture (more particularly specified in the petition), and (b) why the Beneficial Savings Bank should not pay over to the administratrix the balance on deposit in savings account no. M-221260 in the joint names of decedent and respondent, Evelyn H. Geschwindt.

The furniture in dispute comprises living room furniture, bedroom furniture, kitchen furniture, a television set and a sewing machine. It is quite old and of very little value.

Respondent testified that decedent purchased the sewing machine in 1930. It was originally a treadle machine and was later converted for electric use. She testified that she and decedent shared the expense of conversion. She further testified that she purchased the living room and kitchen furniture about 1950 and that decedent later paid her one-half of the cost. Decedent's brother-in-law testified that he gave the bedroom furniture to decedent sometime in 1960, but respondent testified that decedent purchased the furniture from him for $30 and that she paid decedent $15, one-half of the purchase price. I find that the furniture in dispute was owned by respondent and decedent jointly and passed to respondent upon decedent's death.

Respondent admits that the television set and sterling silver flatware belonged to decedent alone and stated that she is willing to turn it over to petitioner if she

will come to respondent's home and get it. See Mr. Butler's letter to the auditing judge dated January 26, 1971. At a time mutually agreeable, respondent is directed to turn over the television set and silver flatware to petitioner or her representative.

When decedent died on August 31, 1966, she and respondent owned savings account no. M-221260 in the Beneficial Savings Bank in their joint names. The account was opened on July 25, 1952, with money transferred from another account which belonged solely to decedent. On December 10, 1970, the balance in the joint account was $2,647.53. On the reverse side of the signature card is an agreement which decedent and respondent signed providing "in case of the death of either . . . the (bank) is hereby authorized and directed to deal with the . . . survivor of us as the sole and absolute owners of such sums."

In a proceeding commenced in decedent's lifetime to have her adjudicated incompetent and a guardian appointed for her estate (sur petition of her sister, Margaret McFarland), respondent testified at the hearing on July 27, 1966, with respect to the savings account in dispute, as follows:

"By the Court:

"Q. Whose money is this?

"A. My name was only on there to draw. It was her money. It was just my name to use . . .

"Q. As a convenience to use for her?

"A. Yes.

"Q. It's all her money?

"A. Yes.

"Q. And you're making no claim to any of it?

"A. No."

In answer to paragraph five of the petition for citation respondent admits that she so testified and did not repudiate her testimony at the audit. She contends,

however, that the testimony taken at the prior hearing is inadmissible because the citation was not served on the alleged incompetent sufficiently in advance of the hearing to comply with the statute and rules of court. There is no merit in her objection. Her testimony in the prior proceeding was given under oath and is a matter of record in this court.

When the agreement clearly expressing the depositor's intent to make an absolute gift inter vivos is certain and unambiguous, ordinary parol evidence is not admissible to nullify its terms in the absence of fraud, accident or mistake: Furjanick Estate, 375 Pa. 484 (1953); Amour Estate, 397 Pa. 262 (1959); Cox Estate, 405 Pa. 444 (1962). In the instant case, however, the testimony of respondent in the incompetency proceeding revealed that the writing on the reverse side of the signature card did not reflect the entire agreement between decedent and respondent. Where a party seeking to have a written agreement enforced according to its terms admits that the writing did not fully and completely state the entire agreement, parol evidence is then admissible to explain and supplement such written agreement: Rogan Estate, 404 Pa. 205 (1961); Slavinski Estate, 420 Pa. 504 (1966).

In addition to respondent's admission that no gift was intended when the joint account was opened, she testified on direct examination, as follows:

"By Mr. Butler:

"Q. You were aware Mrs. Bailey had a bank account in the Beneficial, weren't you?

"A. Yes.

"Q. Do you recall when that was put in joint names?

"A. Well . . .

"Q. Do you recall about when?

"A. Yes, I do.

"Q. What date was that, about? About when?

"A. This would be in the late forties. And in 1952 she had my name put on in case anything should happen."

From respondent's testimony in the incompetency proceeding as well as her testimony at the audit, it is clear that decedent intended to continue control over, and ownership in, the money until her death. If any gift was proposed, it was intended to take effect upon decedent's death and, as such, was testamentary in character. It certainly was not a gift inter vivos.

For the reasons herein stated, I find that decedent did not intend to make an inter vivos gift to Evelyn G. Geschwindt of the balance in savings account no. M-221260 of the Beneficial Savings Bank when she caused her account to be opened in their joint names on July 25, 1952, but intended only to give Evelyn H. Geschwindt the right to make withdrawals therefrom in decedent's lifetime for her benefit.

Accordingly, I enter the following

### DECREE

And now, July 23, 1971, the Beneficial Savings Bank is hereby directed to pay over to Margaret M. McFarland, Administratrix of the Estate of Elizabeth F. Bailey, deceased, all moneys on deposit in savings account no. M-221260 in the names of Elizabeth F. Bailey and Evelyn H. Geschwindt.

Leave is hereby granted to respondent, Evelyn M. Geschwindt, to file exceptions to this decree within 15 days of the date hereof.

Before Bolger, Lefever, Saylor, Shoyer & Silverstein, JJ.

*Edmund P. Butler,* for exceptant.

*Pershing N. Calabro,* for estate.

## OPINIONS SUR EXCEPTIONS

SHOYER, J., March 1, 1972.—We have given careful consideration to the exceptions filed by counsel on behalf of Evelyn Geschwindt. Principally, he complains that the learned hearing judge erred in failing to consider the obvious community intent of decedent in all of her property dealings with Evelyn Geschwindt from the time they commenced living together, and that Judge Bolger, the learned hearing judge, further erred in finding the existence of "fraud, accident or mistake" so as to admit the testimony of Evelyn Geschwindt in violation of the parol evidence rule.

It is well known that joint bank accounts are a common device used by persons who wish to arrange their affairs so that their property will pass to the survivor automatically at death without the necessity of administration.

As counsel's brief correctly points out, the card of the Beneficial Savings Fund which both decedent and claimant signed on July 25, 1952, is identical with the signature card in Amour Estate, 397 Pa. 262 (1959). The agreement signed by both parties reads as follows:

"It is understood and agreed that any and all sums that may from time to time stand in this account to the credit of the undersigned depositors, shall be taken and considered as belonging to them as joint tenants and not as tenants in common; and said The Beneficial Savings Fund Society of Philadelphia, is hereby authorized and directed to pay, unconditionally, from such sums any and all orders unconditionally, from such sums any and all orders drawn by us or by either or any of us; and it is further agreed and understood that in case of the death of either or any of us, said The Beneficial Savings Fund Socity of Philadelphia is hereby authorized and directed to deal with the survivors or survivor of us as the sole and absolute owners

of such sums . . . We intend to be legally bound hereby; and this agreement shall bind our respective heirs, executors, administrators, or assigns."

Despite the clear and unequivocal wording of this agreement, the learned hearing judge considered the admissions made by Miss Geschwindt both at the hearing of the incompetency petition and also when she testified in the present proceeding as being outside the scope of the parol evidence rule. In so doing, Judge Bolger relied on the rulings of our Supreme Court in Slavinski Estate, 420 Pa. 504 (1966), and Rogan Estate, 404 Pa. 205 (1961), which clearly sustain him. These cases hold that where a party seeking to have a written agreement enforced according to its terms admits that the writing did not fully and completely state the entire agreement, parol evidence is then admissible to explain and supplement such written agreement. Miss Geschwindt's testimony must be taken as a clear admission against interest to the effect that she was to have no benefit in this fund until after the death of the decedent.

Looking at the whole record in this case, however, we feel that there is more involved than merely the contract which they both signed pertaining to this particular savings account. Through the testimony of Evelyn Geschwindt, who was allowed to testify with the approval of counsel for administratrix, it was established that the survivor came to live with decedent when decedent's husband was taken to the Veterans Hospital sometime in the 1940's. Thereafter, they continued to live together in the original home and then in another home on Jackson Street which was purchased in about 1958 or 1959. Title to the Jackson Street home was taken at settlement in the name of the two women as joint tenants with right of survivorship. This was done upon the advice of Mrs. Bailey's

brother-in-law, Mr. McFarland. Thereafter, they shared equally or approximately equally the expenses of the home, including the payments on the mortgage. They bought furniture together. Evelyn Geschwindt named decedent beneficiary of her government pension and insurance benefits, and in the ultimate gesture of community ownership decedent directed that Evelyn Geschwindt was to share in her grave lot. The learned hearing judge accepted the testimony of Evelyn Geschwindt that the furniture, which comprised living room furniture, bedroom furniture, kitchen furniture, a television set and a sewing machine were owned jointly and denied the claim of the administratrix to these articles.

These circumstances place the present situation in rather a unique light. In the face of all this evidence that the parties desired to own all things in common with sole ownership going to the survivor, we realize that we have more before us than merely the wording on the saving fund card.

For years, the courts in Pennsylvania and elsewhere have puzzled over the problem of what to do with joint savings bank accounts. Where the two parties are husband and wife, there is very little trouble, if any, caused by the claim of the surviving spouse. But where the survivor is not a spouse but another relative, close or distant, or a stranger, then frequently the estate of decedent will enter an adverse claim against the survivor. Legal theorists have pointed out that the courts have found difficulty in solving the problem because their attempts to answer the question have all been made along the line of recognized legal transactions. They try to fit the problem into one of the pigeon holes or grooves with which they are most familiar and then they attempt to solve it by applying the law relating to these recognized transactions. For example, many

courts have considered the transaction as testamentary in nature and governed by the law of wills, while others have classified it as involving the common law of gifts. Some courts have treated the transaction as a trust, some as a contract between the depositor, the bank and the codepositor, and have, accordingly, determined the rights of the parties by applying the law of trusts or contracts. See "The Use of Joint Bank Accounts as a Substitute for Testamentary Disposition of Property": 17 U. Pitts. L. Rev. 42 (1955).

Counsel for exceptant stresses the contract theory as entitling Miss Geschwindt to recover. He cites no authority for his argument but there is some which tends to support him. Professor Corbin in his treatise on the law of contracts, Vol. 4, sec. 783 (1951), says:

"Suppose . . . that A deposits money, or transfers an existing deposit, to the joint credit of A and C, each to have the power to draw against the account, and the whole to go to the survivor on the death of either. . . . The fact that in these cases A as well as C has power to draw should make no difference except so far as A may exercise this power before his death. C's right as beneficiary that the bank shall honor his drafts is merely conditional on A's not having drawn ahead of him. Nearly all the cases dealing with this problem have reached the result that C gets all the money remaining after A's death; but the analysis is of various inconsistent sorts. Nearly always the discussion is in terms of *gifts* of property. Sometimes a trust theory is invoked. Sometimes the beneficiary is regarded as a promisee. Rarely has the third party been regarded as the beneficiary of a contract between A and the bank. This is due either to insufficient analysis or to the uncertainty and conflict that until recently existed in third party beneficiary law. In all such cases, so long

as there is no fraud on A's creditors, C should get the money that A has not drawn out, either as an assignee, a promisee, the beneficiary of a trust, or the beneficiary of the banking debtor's promise to the depositor." (Italics supplied.)

Pennsylvania authorities which stress the contract theory such as Amour Estate, supra, and Furjanick Estate, 375 Pa. 484 (1953), also speak of the common-law essentials of an inter vivos gift. Thus, in Furjanick, the court said, page 489:

"When a depositor creates a joint savings or checking (bank) account with right of survivorship, and a signature card so stating is executed by both parties, these facts are prima facie evidence of a gift inter vivos by the depositor to the other . . ."

Where a sufficient delivery, actual or constructive, cannot be found, the gift fails regardless of the wording of the contract. Such a case is Chadrow v. Kellman, 378 Pa. 237 (1954), which involved the contents of a safe deposit box in the joint names of decedent and his niece. In a rider to the contract signed by both parties, they acknowledged the receipt of two keys. the niece admitted that her uncle kept both keys, whereupon a majority of our Supreme Court held, page 245:

"It follows that since claimant never had access to the safe deposit box, the donor did not divest himself of dominion over the property claimed and did not invest claimant with ownership, possession or control. The gift consequently fails."

The dissenting opinion by Mr. Justice (later Chief Justice) Bell in Chadrow v. Kellman contains an excellent criticism of the juristic approach which relies solely on the gift theory and excludes the contract theory. The dissenting Justice, one of three, said at page 254:

"That brings us to the basic fallacy of the majority opinion. This is not a so-called gift-case; this is a contract-case. The majority has completely overlooked the fact (1) that delivery is not always necessary to validate a gift which is made and intended to take effect in the donor's lifetime—for example, a declaration of trust, or a deed of trust where the donor is the sole trustee, or, as here, an agreement executed by both parties; and (2) that where an agreement involving a gift is executed by both parties it is, of course, to be interpreted and governed by the principles of contract law."

There is also an excellent expression of the contract theory by the dissenting judge in Nashua Trust Company v. Mosgofian, 97 N.H. 17, 79 A.2d 636 (1951).

After closely studying the record in this case, we believe that the learned hearing judge might well have given adherence to this contract theory. However, even had he done so, we do not believe that claimant, Evelyn Geschwindt, should have benefited by such consideration. The bank account in suit, together with interest, amounts to $2,647.53. When Miss Geschwindt was called to the stand by counsel for the administratrix under crossexamination, she was asked about another bank account which she originally had in her name in The Beneficial Saving Fund. She said that she had arranged to put this account in joint names in 1948 or thereabouts. However, in March of 1966, just at the time that decedent entered the Eugenia Hospital for treatment of her mental illness, Evelyn Geschwindt admitted that she withdrew the money in her account and put it in an account in her name alone. Obviously, this was without the approval of decedent, whose consent as a mental patient, even if given, would be ineffective. She admitted that there was about $3,000 in the account at that time. Taking the words from

the mouth of the claimant at face value, we can do no less than treat this as a rescission on the part of this claimant of the mutual agreement existing between the parties which provided for the two bank accounts in Beneficial to be maintained in the joint names of both. Applying equitable principles, this deliberate act on the part of Evelyn Geschwindt to sever all claims that Mrs. Bailey might have had to Evelyn Geschwindt's account must be regarded as a simultaneous rescission of her claim to the account which formerly belonged to Mrs. Bailey alone.

There is ample authority for us as a court en banc to make our own findings of fact from the evidence which are not in contravention with those facts found by the hearing judge, or even to draw different conclusions and inferences from those facts which he has found: Kalyvas v. Kalyvas, 371 Pa. 371, 375, 376 (1952); Belmont Laboratories, Inc. v. Heist, 300 Pa. 542, 547 (1930).

Lastly, exceptant complains of the statement by the learned hearing judge that " [i]f any gift was proposed, it was intended to take effect upon the decedent's death and, as such, was testamentary in character." From this, her counsel argues that if the gift was indeed testamentary, then the funds belong to the survivor by inheritance rather than by operation of contract Such result would not follow, however, because the written agreement as qualified by the admissions of the claimant could not qualify as a will. Wills are ambulatory. They can be revoked at the pleasure of testator. Giving full effect to the evidence of claimant, decedent had irrevocably assigned any balance remaining in the account to the survivor of the two contracting parties. No more than in Lewis' Estate, 139 Pa. Superior Ct. 83 (1940), could this signature card be admitted to probate or given effect as a will.

For the reasons set forth above, in addition to the reasons set forth by the learned hearing judge in his opinion, we conclude that the decree of the learned hearing judge is right and that the proceeds in the bank account should now go to the administratrix of the Estate of Elizabeth F. Bailey. Wherefore, the exceptions are dismissed and the decree of the learned hearing judge is affirmed.

## CONCURRING OPINION

LEFEVER, J., March 1, 1972.—There is probably no subject in the law more confused and confusing than that involving ownership of a joint bank account upon the death of one of the joint depositors. The issue in the instant case is typical. The facts are sui generis.

Not without some doubt, I have come to the conclusion that the learned auditing judge correctly decided the case in light of the most recent decisions of the Pennsylvania Supreme Court. However, I cannot join completely in his reasoning or that set forth in the majority opinion.

Hence, I concur in the result.